IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIA V. POLIAKOVA, § § *Plaintiff*, § § v. § § EMILIO T. GONZALEZ, DIRECTOR § UNITED STATES CITIZENSHIP AND § IMMIGRATION SERVICES (USCIS), § MICHAEL CHERTOFF, SECRETARY, § UNITED STATES DEPARTMENT OF § HOMELAND SECURITY, § ROBERT S. MUELLER, DIRECTOR, § FEDERAL BUREAU OF INVESTIGATION, § LINDA SWACINA, DIRECTOR, MIAMI § DISTRICT OFFICE, USCIS § § *Defendants.* § § | CIVIL ACTION NO. 07-1210 (RCL) |

**MOTION TO TRANSFER AND FOR ENLARGEMENT OF TIME TO FILE ANSWER**

Defendants, by and through undersigned counsel, move to transfer this case to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Further, Defendants request that the deadline for filing an answer to the complaint be deferred pending resolution of this motion to transfer, making their answer due no sooner than 15 days after the Court issues an order resolving the transfer motion.[1] In accordance with Local Civil Rule 7(m), counsel for Defendants contacted counsel for Plaintiff to request Plaintiff's position on this motion. Plaintiff opposes transfer and Defendants' request for an enlargement.

---

[1] If the Court grants the transfer motion, no answer will be due in this Court, and the Southern District of Florida will determine the deadline for submitting an answer.

In support of this motion, Defendants refer the Court to the accompanying memorandum of points and authorities.  A proposed Order consistent with this motion also is attached.

Dated: October 10, 2007

Respectfully submitted,

  /s/ by MJ
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

  /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

  /s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198  Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**Of Counsel:**

SHERI GLASER
Trial Attorney
U.S. Department of Justice Civil Division
Office of Immigration Litigation

SYLVIA ALONSO
Associate Counsel
United States Citizenship and Immigration Services
Miami, Florida

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIA V. POLIAKOVA, § § *Plaintiff*, § § v. § § EMILIO T. GONZALEZ, DIRECTOR § UNITED STATES CITIZENSHIP AND § IMMIGRATION SERVICES (USCIS), § MICHAEL CHERTOFF, SECRETARY, § UNITED STATES DEPARTMENT OF § HOMELAND SECURITY, § ROBERT S. MUELLER, DIRECTOR, § FEDERAL BUREAU OF INVESTIGATION, § LINDA SWACINA, DIRECTOR, MIAMI § DISTRICT OFFICE, USCIS § § *Defendants.* § | CIVIL ACTION NO. 07-1210 (RCL) |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
TO TRANSFER VENUE AND FOR ENLARGEMENT OF TIME TO FILE ANSWER**

**INTRODUCTION**

This case concerns a Form I-485 "adjustment of status" application filed by Plaintiff Natalia Poliakova, in which Poliakova requested that Defendant United States Citizenship and Immigration Services ("USCIS") exercise its discretion and make her a lawful permanent resident of the United States. Poliakova argues that Defendants have failed to adjudicate her application within a reasonable amount of time, and seeks an order from this Court compelling Defendants to complete the adjudication of her I-485 application immediately. Although Poliakova initiated this action in this Court, venue is more appropriate in the Southern District of Florida. The only nexus between this District and this case is the fact that some of the agency officials named as defendants have offices in the District of Columbia. However, the events

giving rise to this complaint — namely, the processing and adjudication of Poliakova's I-485 — either have transpired or will occur at the USCIS Miami District Office in Miami, Florida. Accordingly, the Southern District of Florida is a more appropriate forum for this case, and the interests of justice support transfer.

## ARGUMENT

I. **THIS COURT SHOULD TRANSFER VENUE TO THE SOUTHERN DISTRICT OF FLORIDA.**

    A. **This Case Has an Inadequate Nexus to Washington, D.C.**

This case is governed by the general venue statute, 28 U.S.C. § 1391, which establishes default rules for venue that apply to federal lawsuits where the underlying statutes do not specify their own venue rules. *See* 28 U.S.C. § 1391(a), (b), and (e) (each applying "except as otherwise provided by law."). Section 1391 identifies three possible bases for venue for claims against federal government officials or agencies: (1) where the defendant resides; (2) the district where a substantial part of the events or omissions giving rise to the claim occurred; and (3) the district where the plaintiff resides if no real property is involved in the action. *See id.* § 1391(e). Poliakova appears to rely on the first two prongs of this test, and alleges that venue is proper in this Court because national policy concerning the adjudication of applications for immigration benefits is formulated by the Department of Homeland Security ("DHS") and USCIS, and both federal agencies "reside" in Washington, D.C. *See* Compl. ¶ 9. Poliakova's argument lacks merit.

When a plaintiff bases her venue arguments solely on federal defendants' presence in Washington D.C., the venue challenge should be examined "very closely." *Cameron v. Thornburgh*, 983 F.2d 253, 256 (D.C. Cir. 1993). That close scrutiny has led courts in this

District to transfer cases to a district with a closer nexus to the parties' dispute. *See id.* (ruling Washington, D.C. was not the proper venue because the sole connection to Washington, D.C. was the inclusion of the Director of the Federal Bureau of Prisons and the Attorney General in their official capacities); *see also, e.g.*, *Rosales v. United States*, 477 F. Supp. 2d 213, 215-17 (D.D.C. 2007) (transferring case against federal agency to district in which the challenged events took place); *Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86-89 (D.D.C. 2005) (concluding environmental case should be transferred to Utah where D.C. officials only set general policies and did not make specific decisions being appealed); *Joyner v. District of Columbia*, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003) (holding that the case's only connection to Washington, D.C. was the situs of named federal government defendants and transferring to a district with which the case had several connections). Otherwise, "a plaintiff might manufacture venue in the District of Columbia . . [b]y naming high government officials as defendants [and] bring[ing] suit here that properly should be pursued elsewhere." *Cameron*, 983 F.2d at 256.

As was true in *Cameron* and *Joyner*, the acts and omissions at issue in this case occurred outside the District of Columbia. Federal officials at the USCIS Miami District Office are responsible for adjudicating Poliakova's application, and deciding whether or not to grant her permanent resident status. *See* Declaration of Maria Aran, ¶ 11 (Exh. 1). Emilio Gonzalez, Michael Chertoff, and Robert Mueller will not be involved in that process. Accordingly, the fact that those three defendants have offices in Washington, D.C. does not establish a sufficient connection to this District.

> **B.**     **The Factors Courts Consider When Determining Whether to Transfer A Case Pursuant to 28 U.S.C. Section 1404 Support Transfer to the Southern District of Florida.**

For the "convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A threshold question is whether the case could have been brought in the district to which transfer is sought. *See Stewart Organization v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (*citing Van Dusen v. Barrack*, 376 U.S. 612, 613 (1964)). Courts must conduct a case-by-case analysis and balance the private interests of the parties with public interests such as efficiency and fairness to decide if transfer is proper. *See id*. at 29. The moving party bears the burden to establish that it is proper to transfer the case. *See Trout Unlimited v. United States Dep't of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996) (*citing Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987)) (citations omitted). Poliakova could have brought this case in the Southern District of Florida, and both the private and public interests favor transfer to that court.

> **1.**     **Poliakova Could Have Brought This Case in the Southern District of Florida Because Her Claim Arose in That Jurisdiction and She Resides There.**

Poliakova clearly could have brought this case in the Southern District of Florida. As noted *supra*, venue is proper in the district where: (1) the defendant resides; (2) a substantial part of the events or omissions giving rise to the claim occurred; or (3) the plaintiff resides if no real property is involved in the action. *See* 28 U.S.C. § 1391(e). Poliakova resides in the Southern District of Florida; and the principal defendant, Linda Swacina, Director of the USCIS Miami District Office, is in the Southern District of Florida. *See* Compl.¶ 11. Further, a substantial part of the events or omissions giving rise to Poliakova's claim occurred in the Southern District of

Florida, because her application is pending in the USCIS Miami District Office. *See id.* at Exh.12; Aran Decl. ¶¶ 8, 11. In addition, the Miami District Office will complete the adjudication of Poliakova's application once all investigations have been completed; therefore any alleged delay in the processing of Poliakova's applications is a matter related to the USCIS Miami District office. *See* Aran Decl. ¶ 11.

### 2. The Private Interests Favor Transfer to the Southern District of Florida.

The private interests favor transfer. When assessing those interests, courts consider: plaintiff's choice of forum, defendant's choice of forum, whether the claim arose elsewhere, convenience of the parties, convenience of the witnesses, and ease of access to sources of proof. *See Trout Unlimited*, 944 F. Supp. at 16 (citation omitted). Although courts generally accord substantial deference to a plaintiff's choice of forum, that deference is lessened when the forum chosen is not the plaintiff's home forum. *See Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981)). Courts also apply less deference when the chosen forum has an inadequate nexus to the events in the case. *See Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86; *Shawnee Tribe*, 298 F. Supp. 2d at 24 (plaintiff's choice given less deference when the action has no "meaningful ties" to the jurisdiction).

#### a. Poliakova's Choice of Forum Deserves Little Deference.

Poliakova's choice of forum deserves little deference because she does not reside in this District, and because this District "lacks meaningful ties to the controversy." *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86. Federal officials in Miami, Florida are responsible for adjudicating Poliakova's application for adjustment of status, and will make the final decision

5

regarding that application. *See* Aran Decl. ¶¶ 8, 11. As Poliakova herself acknowledges, her interview in connection with her application was conducted in the USCIS *Miami* District Office, and she has contacted the USCIS *Miami* District Office for updates on the status of her application. *See* Compl. at Exhs. 4, 6, 11, 13. Accordingly, this case is similar to other cases in which courts have found that the private interests favor transfer because the "primary issue in th[e] case" concerns a decision made by an agency field office, and not headquarters. *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 87; *see, e.g., Shawnee Tribe*, 298 F. Supp. 2d at 24 (transferring and noting that GSA field offices were "actively involved" in decision at issue and the decision-making process was not "substantially focused" in Washington, D.C.); *Sierra Club v. Flowers*, 276 F.Supp. 62, 67-68 (D.D.C. 2003) (transferring case because federal officials in Florida made the relevant decision and officials in Washington, D.C. did not play an "active or significant" role in the decision-making process); *Airport Working Group of Orange County, Inc. v. United States Dep't of Defense*, 226 F. Supp. 2d 227, 230-31 (D.D.C. 2002) (transferring because connection to DC was "attenuated" where D.C. officials were not actively involved in challenged decision).

It is true that three of the Defendant officials work for agencies with offices in the District of Columbia. *See* Compl. ¶ 9. However, that does not make venue proper in this Court. Those officials, and the agency headquarters, do not have an active role in the decision-making process concerning Poliakova's application. Accordingly, the fact that those officials "reside" in the District of Columbia does not control the venue analysis. *See Shawnee Tribe*, 298 F. Supp. 2d at 25 (finding venue appropriate where field office was located despite involvement of "some officials. . . who work in the Washington, DC area"). Instead, the relevant factor is that the officials who will adjudicate Poliakova's application are in the USCIS *Miami* District Office.

The court's analysis in *Abusadeh v. Chertoff,* 2007 WL 2111036, at *6 (D.D.C. July 23, 2007), is instructive. Abusadeh filed a complaint in this District seeking to compel action on his applications for naturalization and to replace an alien registration card. *See id.* at *1. Like Poliakova, Abusadeh was interviewed at the local USCIS field office, and contacted that office for updates on the status of his applications. *See id.* at *6. District Judge Kollar-Kotelly concluded that Abusadeh's choice of forum — Washington, D.C. — was entitled to little deference because there are no meaningful ties between this District and pending immigration applications being adjudicated by a USCIS field office outside Washington, D.C. *See id.* at * 6-*8. The same is true here.

Poliakova's reliance on the role DHS and USCIS play in formulating national policy is misplaced. *See* Compl. ¶ 9. The fact that a plaintiff's claim may be related to a national policy that was formulated at headquarters in Washington, D.C. is not determinative for venue purposes. *See Zakiya v. U.S.*, 267 F. Supp. 2d 47, 59 (D.D.C. 2003). In this case, as in *Zakiya*, "[p]laintiff principally takes issue with the conduct of individuals, not with the policies underlying that conduct." *Id.* at 59. That is, Poliakova is concerned with the adjudication of *her* I-485 application, and not the regulations or rules generally applicable to requests for adjustment of status. Thus this case concerns the conduct of USCIS officials in Miami, not the agency headquarters or officials located in Washington, D.C. *See Abusadeh*, at *6 (transferring venue where plaintiff's complaint focused solely on his immigration applications and the complaint did not "assert a general broad-based challenge to immigration policies or regulations"). Even if this case had national significance — and it does not — that would not tilt the balance in favor of deference to Poliakova's choice of forum. *See Sierra Club*, 276 F. Supp. 2d at 68 (holding that the "national significance of the Everglades ecosystem does not tilt the balance in favor of

deferring to the plaintiffs' choice of forum" because the federal officials in Washington, D.C. did not have an active role in the decision to issue a permit).

     b. <u>Defendants' Choice of Forum Would Place This Case in a District With Strong Connections to Poliakova's Case.</u>

The Court next considers Defendants' choice of forum. Defendants have legitimate reasons for seeking transfer. The Southern District of Florida is where Poliakova resides and is the jurisdiction that is home to the USCIS Miami District Office. The Miami District Office has the strongest connection to the case, since that office will adjudicate Poliakova's application for adjustment of status. Poliakova originally filed her application with the USCIS Texas Service Center, but the Texas Service Center transferred Poliakova's application to the USCIS Miami District Office. *See* Compl. ¶ 16. Poliakova had her adjustment of status interview at the USCIS Miami District Office, and directed her requests for updates on her application to the USCIS Miami District Office. *See id.* at Exhs. 4, 6, 11, 13.

    **3.** **Other Compelling Reasons Support Transfer of Venue to The Southern District of Florida.**

There are additional compelling reasons to transfer this case to the Southern District of Florida. Since this case arose in the Southern District of Florida, there is local interest in resolving it there. *See Schmidt v. American Institute of Physics*, 322 F. Supp. 2d 28, 36 (D.D.C. 2004) (holding that cases should be resolved in the locale in which they arise). Moreover, it will be more convenient to litigate this case in the Southern District of Florida. As noted, Poliakova resides in Miami, Florida. It is surely more convenient to litigate this case in Poliakova's home forum, rather than having to travel to Washington, D.C. In addition, since the Miami District Office is responsible for the adjudication of Poliakova's application: (1) the people involved in

making the determination as to Poliakova's applications are located in Miami; and (2) documents or records related to the case would be located in Miami.

### 4. Transfer Would Serve the Public Interest.

The public interest also favors transfer. The relevant considerations include: the transferee's familiarity with governing laws, relative congestion of the calendars of the potential transferee and transferor courts, and local interests in deciding local controversies at home. *See Trout Unlimited*, 944 F.Supp. at 16 (citation omitted); *Airport Working Group of Orange County, Inc.*, 226 F. Supp. 2d at 229. Since this action concerns federal law, the Southern District of Florida is as familiar with the applicable law as the District of Columbia. In addition, there is no evidence that the Southern District of Florida's docket is more congested than the District of Columbia's docket. *See Trout Unlimited*, 944 F. Supp. at 16. Both factors weigh in favor of transferring this case to the Southern District of Florida.

## II. THE DEADLINE FOR DEFENDANTS' ANSWER SHOULD BE DEFERRED PENDING RESOLUTION OF THE TRANSFER MOTION.

Defendants also move, pursuant to Federal Rule of Civil Procedure 6(b)(1), that the deadline for submitting their answer or other response to Plaintiff's complaint be deferred pending resolution of this motion to transfer. Defendants' answer currently is due October 10, 2007. Defendants request that their answer be due no sooner than 15 days after the Court issues an order resolving the motion to transfer venue. If the Court grants Defendants' motion and transfers the case, the Southern District of Florida will determine when Defendants' answer shall be due. If the Court denies the motion, Defendants would submit their answer or other response within 15 days of the Court's order.

There is good cause to enlarge this deadline. Defendants anticipate that they will file a dispositive motion pursuant to Federal Rule 12(b), in lieu of filing an answer. However, the Court will have to resolve the instant motion to transfer before determining whether to reach the merits of that dispositive motion. Further, if this case is transferred to the Southern District of Florida, the undersigned will not be counsel for Defendants, and the United States Attorney's Office for the Southern District of Florida will assume responsibility for the case. The Assistant United States Attorney from that office will need time to become familiar with the case once the file is received and the precedent from that Court and the Eleventh Circuit (rather than the D.C. Circuit precedent that would control this case). Accordingly, deferring the deadline for Defendants' answer pending resolution of the motion to transfer would promote efficiency and conserve resources.

**CONCLUSION**

For the foregoing reasons, this Court should GRANT Defendants' motion and transfer venue to the Southern District of Florida and GRANT Defendants' motion for an enlargement of time to file an answer or otherwise respond to Plaintiff's complaint.

Dated: October 10, 2007                     Respectfully submitted,


         /s/ by MJ
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

         /s/ Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

         /s/ Robin M. Meriweather
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198  Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov


**Of Counsel:**

SHERI GLASER
Trial Attorney
U.S. Department of Justice Civil Division
Office of Immigration Litigation

SYLVIA ALONSO
Associate Counsel
United States Citzenship and Immigration Services
Miami, Florida

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATALIA V. POLIAKOVA, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 07-1210 (RCL) |
| § | |
| EMILIO T. GONZALEZ, DIRECTOR § | |
| UNITED STATES CITIZENSHIP AND § | |
| IMMIGRATION SERVICES (USCIS), § | |
| MICHAEL CHERTOFF, SECRETARY, § | |
| UNITED STATES DEPARTMENT OF § | |
| HOMELAND SECURITY, § | |
| ROBERT S. MUELLER, DIRECTOR, § | |
| FEDERAL BUREAU OF INVESTIGATION, § | |
| LINDA SWACINA, DIRECTOR, MIAMI § | |
| DISTRICT OFFICE, USCIS § | |
| § | |
| *Defendants.* § | |

## **ORDER**

Upon consideration of Defendants' Motion to Transfer Venue and for Enlargement of Time to File Answer, it is this _____ day of _____, 2007,

ORDERED that Defendants' Motion be, and hereby is, granted;

it is further ORDERED that:

____   this case be, and hereby is, TRANSFERRED to the Southern District of Florida;

____   Defendants' Answer or other response to the complaint shall be due no sooner than 15 days after the Court issues an order resolving the Motion to Transfer.

SO ORDERED.

_____

United States District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF COLOMBIA
CASE NO. 1:07-cv-01210

NATALIA POLIAKOVA,

    Plaintiff

v.

GONZALES, et al.,

    Defendant.
_____ /

## DECLARATION OF MARIA ARAN

I. Maria Aran. declare as follows:

1.    I am the Chief of Staff for the United States Citizenship & Immigration Services (USCIS) in the Miami and the Caribbean District (MAC). an agency within the Department of Homeland Security. My responsibilities as the Chief of Staff include overseeing the adjudication of applications for immigration benefits provided for under the Immigration and Nationality Act.

2.    The subject matter of this declaration involves my official duties as the Chief of Staff for the Miami and the Caribbean District of USCIS. I am aware of the facts of the cases referred to herein upon my review of the plaintiffs' administrative files and computer records maintained by USCIS.

3.    When a visa petition or other application seeking an immigration benefit on behalf of an alien is filed with USCIS. the agency conducts numerous mandatory criminal

1

and national security background checks. These checks are conducted both to enhance national security and ensure the integrity of the immigration process. These security and background checks serve to screen out aliens who may seek to harm the United States and its citizens or who may be seeking immigration benefits improperly or fraudulently. These security checks have yielded information about applicants involved in violent crimes, sex crimes, crimes against children, drug trafficking and individuals with known links to terrorism. Pursuant to established agency policy, all required security checks must be completed prior to adjudication of the application.

4.  The attached Fact Sheet explains the different types of checks that must be completed. *See* Fact sheet dated April 25, 2006, a true and correct copy of which is attached hereto as Exhibit 1). The checks include the FBI Name Check, FBI fingerprint check, and the DHS-managed Interagency Border Inspection System (IBIS). The records maintained in the FBI name check process consist of administrative, applicant, criminal, personnel and other files compiled by law enforcement agencies. Although in the majority of FBI name checks no matches are found, some cases involve complex or highly sensitive information and cannot be resolved quickly. The IBIS system contains records and information from more than 20 federal law enforcement and intelligence agencies including the Central Intelligence Agency (CIA), FBI and other divisions of the U.S. Department of Justice, the Department of State, DHS Customs and Border Protection (CBP) and other DHS agencies. It is a multi-agency effort with a central system that combines information from these various sources and databases to compile information regarding national security risks, public safety concerns, and other law enforcement concerns. IBIS provides, but is not limited to, information related to persons

who are wanted criminals, persons of interest in the context of national security and other derogatory information, including adverse immigration history. While the results of an IBIS query are usually available immediately, in some cases information found will require further investigation. Finally, FBI fingerprint checks provide information relating to criminal background within the United States. Results are usually received within days, and while the vast majority results in no criminal record, positive results may have a direct bearing on the eligibility of an applicant for the immigration benefit being sought.

5.     For most applicants, USCIS can quickly determine if there are criminal or security related issues in the applicant's background that affect eligibility for immigration benefits. However, due both to the sheer volume of security checks USCIS conducts, and the fact that USCIS must await responses from the FBI or other relevant agencies that conduct some of the required security checks, some delays on individual applications are unavoidable and may be lengthy. Moreover, in some cases a background or security check will reveal that positive (derogatory) information on the subject alien is possessed by some agency other than USCIS without necessarily revealing the substance of that information. In such cases, USCIS works closely with the other law enforcement or intelligence agencies to obtain all available information concerning the positive result in order to properly evaluate its significance. Even where the FBI or a third agency has provided a final response, a case may still be considered pending where the response requires further investigation or review by USCIS or another agency. It is vitally important to thoroughly screen each applicant in order to resolve all concerns of a law

3

enforcement or national security nature before determining that an individual is eligible for an immigration benefit.

6.     USCIS reports the average processing times for specific applications and petitions on the USCIS website. This information reflects only average processing times on the date the information is published. Average processing times fluctuate widely and will sometimes even regress for a specific form type due to a number of factors, including a reallocation of agency resources, reordering of the agency's priorities, and other reasons. Additionally, not every application will require the same level of inquiry. Some may require a more detailed level of review and or investigation from either the USCIS or other agencies for a number of reasons ranging from the alien's eligibility for the benefit sought to national security concerns. Accordingly, even when it appears that the adjudication of a particular application is outside the average processing time, this does not establish that the delay is unreasonable or even due to factors within the control of USCIS.

7.     An alien who has applied for adjustment of status may apply for and obtain employment authorization for the entire time his or her application is pending. Most applicants for adjustment of status may also apply for and obtain advance parole to enable them to travel abroad during the pendency of their application. Thus, applicants for adjustment of status are not as adversely affected by delays in the adjudication of their applications as are aliens filing for other immigration benefits.

8.     USCIS records indicate that Natalia Poliakova filed her application for adjustment of status on or about July 11, 2003. Plaintiff's application was transferred by the Texas Service Center to the Miami District in November 2003.

9. Plaintiff was interviewed in connection with her application on November 22, 2004. Plaintiff's application could not be adjudicated at that time because the plaintiff's security checks were outstanding.

10. The FBI response to the name check was forwarded to the Agency on or about September 10, 2003. However further review and resolution by USCIS and further consultation with appropriate law enforcement agencies is warranted. As of the date of this declaration, USCIS may not proceed with the adjudication of this matter until the all three required background checks have been initiated, completed by other law enforcement agency, and clearance has been obtained. Any adverse or negative information as to this alien will affect the statutory eligibility for the immigration benefit being requested such as being admissible to the United States and whether the benefit may be granted as a matter of discretion.

11. Upon completion of all background checks, it is anticipated that a decision on plaintiff's application for adjustment of status will be rendered. As plaintiff resides within the MAC district, the MAC district is responsible for adjudicating plaintiff's application. *See generally* 8 C.F.R. § 103.2(a)(6). Therefore, the decision denying or approving said application would be issued by the MAC district.[1]

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 3 day of October 2007.

Maria Aran, Chief of Staff
USCIS, Miami and the Caribbean District

---

[1] If plaintiff were to move out of the MAC district during the pendency of her application, her application would be transferred to the District Office where the plaintiff resides for further processing and adjudication. *See generally* 8 C.F.R. § 103.2(a)(6); *Adjudicator's Field Manual* § 10.4.