UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
NATALIA V. POLIAKOVA                        )
                                            )
        Plaintiff,                          )
                                            )
v.                                          )        Civ. No. 07-1210 (RCL)
                                            )
EMILIO T. GONZALEZ, Director                )
U.S. Citizenship and Immigration Services, et al.,   )
                                            )
        Defendants.                         )
_____)

### PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER AND FOR ENLARGEMENT OF TIME TO FILE ANSWER

The Plaintiff, Natalia V. Poliakova, by counsel, respectfully opposes the Defendants'

Motion to Transfer and for Enlargement of Time to File Answer ("Transfer Motion"), for the

reasons set forth below.

**I.      INTRODUCTION**

This Court should deny the Defendants' motion to transfer and for enlargement of time to

file answer.  Venue is proper in this forum under 28 U.S.C. §1391(e) and the Defendants have

not demonstrated that a transfer to the U.S. District Court for the Southern District of Florida is

warranted under 28 U.S.C. §1404(a).  In particular, the Defendants' assertion that "the only

nexus between this District and this case is the fact that some of the agency officials named as

defendants have offices in the District of Columbia" is belied by the evidence submitted

herewith, which reveals that a review of the Plaintiff immigration file occurred at the

Headquarters of Defendant U.S. Citizenship and Immigration Services ("CIS"), located in

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

1

Washington, D.C.  The evidence further suggests that such review was undertaken in connection with required security and background checks, which are the source of the complained-of delay in adjudicating the Plaintiff's application for adjustment of status.  To the extent the Defendants suggest that presentation of witnesses or evidence may be required, the Plaintiff notes that such discovery is contrary to the nature of a writ of mandamus, which is sought to compel performance by public officials of a purely ministerial duty that has been unreasonably delayed or withheld.

In addition, the Defendants' insistence that "the events giving rise to this complaint … either have transpired or will occur at the USCIS Miami District Office in Miami, Florida" is contradicted by the very nature of the delay in this case.  *Id.*  Decisions governing the imposition and processing of security and background checks on applicants for certain immigration benefits, including adjustment of status, occur at the highest levels of CIS and the Department of Homeland Security ("DHS") – namely, at CIS and DHS Headquarters in Washington, D.C. Moreover, as the Defendants have acknowledged, the Plaintiff's adjustment application remains unadjudicated by CIS because required FBI name, FBI fingerprint, and IBIS background checks have not yet been completed.  *See* Transfer Motion, Aran Decl. ¶¶4-11.  Although the Defendants argue that the Miami District Office is responsible for issuing "the decision denying or approving [Ms. Poliakova's] application," *id.* at ¶11, they offer no evidence that the required background checks are actually being carried out by CIS officials in Miami.  To the contrary, as described more fully below, the FBI name and fingerprint checks are conducted *outside* the Miami district, at the FBI's Criminal Justice Information Services facility located in West Virginia.

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

2

Finally, the Defendants' eleventh-hour request that the deadline for filing an answer to the Plaintiff's Complaint once again be extended – until "no sooner than 15 days after the Court issues an order resolving the transfer motion" – is unjustified and appears solely for the purpose of further unwarranted delay. The Plaintiff has been waiting more than four years for a decision on her adjustment of status application, and this mandamus lawsuit was brought only after countless entreaties to the agency were met with stubborn inaction. *See* Plaintiff's Verified Complaint for Mandamus and Declaratory Judgment ("Complaint"), ¶¶16-25. The Defendants' latest dilatory tactic, in a case centered on well-documented allegations of unreasonable agency delay, is clearly not "in the interest of justice" and should not be countenanced by this Court. 28 U.S.C. §1404(a).

## II.    RELEVANT FACTS AND PROCEDURAL HISTORY

On July 10, 2003, the Plaintiff filed an Application to Adjust Status to Lawful Permanent Resident (Form I-485), based on an approved Immigrant Petition for Alien Worker (Form I-140), with the CIS Texas Service Center. *See* Complaint Exhs. 1, 2. Along with her adjustment application, the Plaintiff filed applications for employment authorization (Form I-765) and advance parole travel document (Form I-131).[1] *See* Exh. 1 (Affidavit of Natalia V. Poliakova) (attached hereto). Approximately four months later, on November 14, 2003, the CIS Texas Service Center issued a Transfer Notice indicating that the Plaintiff's case had been transferred

---

[1] Pursuant to section 212(d)(5)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §1182(d)(5)(A), CIS is authorized to grant advance parole to a person whose adjustment of status application is pending and who must leave the United States for *bona fide* business or personal reasons. Advance parole is obtained by filing with CIS a completed Form I-131 Application for Travel Document and paying the requisite $305 filing fee. When sought in connection with a pending adjustment of status application – as in this case – advance parole will be granted for multiple entries and for the time period required to complete the adjustment process, although it must be renewed on a yearly basis until the adjustment process is completed. Renewal is accomplished by filing with CIS a completed Form I-131, along with the filing fee, within 120 days of the expiration of the current document. An I-131 application for advance parole can be submitted to CIS in conjunction with an I-485 application for adjustment of status.

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

3

to the CIS Miami District Office.  *See* Complaint Exh. 3.  On November 3, 2004, CIS sent the

Plaintiff a notice of adjustment of status interview, which she attended as directed on November

22, 2004.  *See* Complaint Exh. 4.  As instructed, on November 23, 2004, the Plaintiff submitted

her fingerprints to CIS.  As described more fully in her Complaint and in the attached affidavit,

the Plaintiff has made numerous inquiries regarding the status of her adjustment of status and

accompanying applications for immigration benefits, but has repeatedly been informed that

processing of her case is delayed owing to background security checks.  *See* Complaint ¶¶17-22

and Exhs. 5-14; Exh. 1.

Of particular note, the Plaintiff's inquiries have revealed that although her initial

application was filed with the CIS Texas Service Center, her case was subsequently transferred

to the CIS Miami District Office, where she attended her adjustment of status interview, and also

to CIS Headquarters in Washington, D.C.  Specifically, on April 19, 2007, the Plaintiff submitted

a National Benefits Center Liaison Assistance Form through the American Immigration Lawyers

Association ("AILA"), regarding the delayed processing of her Form I-131 Application for

Travel Document, which must be renewed yearly until the adjustment of status process is

completed.  *See* Exh. 1.  On April 24, 2007, Joanna Blazej, an employee of Larry S. Rifkin,

Esquire, requested that AILA's Florida Bar International Law Section Liaison submit an inquiry

to CIS's National Benefits Center ("NBC") regarding the delay.  *See* Exh. 2 (attached hereto).

On the same day, CIS's NBC Congressional Liaison, Matthew J. Elliott, responded as follows:

> Hi Joanna—
>
> Someone at HQ will have to address this inquiry for you.  I-131 MSC-07-800-48514 was relocated to Central Office Washington on 1-5-07.

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

4

Thanks,

Matthew J. Elliott
Congressional Liaison
The National Benefits Center
US Citizenship & Immigration Services
DEPARTMENT of HOMELAND SECURITY

*Id.* In addition, on April 25, 2007, the Plaintiff received a response from Gerald C. Rovner, stating "This case is at USCIS HQ for review. Please contact them (Congressional/Liaison Office) for further information." Exh. 1. The Plaintiff then re-addressed her AILA Liaison inquiry to CIS Liaison Shawn Orme, who in turn directed the inquiry to Bob Deasy at AILA. *Id.* Mr. Deasy replied, "I think your case is hung up in security-related background checks. … Liaison can't move a case that is in background checks. Only a federal court mandamus can move a case stuck in background checks." *Id.* The delayed I-131 application for advance parole travel document was eventually approved on April 30, 2007, but the Plaintiff's adjustment application remains pending. *Id.*

The Plaintiff cannot understand the reason for such a lengthy delay in processing her background checks. Since 2004, the Plaintiff has represented United Space Alliance, LLC, the largest contractor for the National Aeronautics and Space Administration ("NASA"), in its negotiations with the Russian Space Agency. Exh. 1. As detailed in her affidavit, the Plaintiff has been subjected to numerous, repeated, and ongoing security and background checks in connection with her professional activities, and she has never been denied clearance or determined to be a security threat. *Id.* In addition, the Plaintiff was required to undergo a background check in order to be sworn in as a member of the Florida Bar. *Id.*

On June 6, 2007, the Plaintiff, through counsel, notified the CIS Miami District Office of her intent to file a complaint for writ of mandamus in U.S. District Court absent a response

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

5

within 30 days concerning the status of her case.  *See* Exh. 3 (attached hereto).  The Plaintiff

received no response.  Consequently, the Plaintiff filed her complaint with this Court on July 5,

2007.  The Plaintiff and her counsel elected to file suit in the District of Columbia pursuant to 28

U.S.C. §1391(e), as this is an action against officers and agencies of the United States in their

official capacities, brought in a district where a substantial part of the events or omissions giving

rise to the Plaintiff's claim occurred.  *See* Complaint ¶9.  In addition, three of the four named

Defendants are residents in this District, and national policy concerning adjudication of

applications for immigration benefits – including the background check procedure for applicants

for adjustment of status, employment authorization, and advance parole – is formulated by the

DHS and implemented by CIS and the FBI, all of which are federal agencies resident in this

District.  *Id.*

On September 6, 2007, counsel for the Defendants requested a 30-day extension of time

to file an answer to the Plaintiff's complaint, which Plaintiff's counsel did not oppose.  The

extension request was granted by the Court and a new answer deadline was set for October 10,

2007.  On October 10, 2007, Defendants' counsel moved to transfer venue of this case to the

Southern District of Florida and requested a further extension of time to file an answer, until "no

sooner than 15 days after the Court issues an order resolving the transfer motion."  Transfer

Motion at 1.

For the following reasons, the Court should deny the Defendants' motion to transfer,

deny the request for further extension of time to file an answer, and grant the relief sought by the

Plaintiff in her mandamus complaint, to wit, order the Defendants and those acting under them to

take all appropriate action to perform their duty to complete the background check process and

adjudicate the Plaintiff's adjustment of status application without further delay.

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

6

## III.    STANDARD OF REVIEW

A civil action brought against a U.S. Government defendant – such as the instant mandamus suit – is governed by the venue provision of 28 U.S.C. §1391(e), which provides:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, may, except as otherwise provided by law, be brought in any judicial district in which (1) a defendant in the action resides, (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is subject of the action is situated, or (3) the plaintiff resides if no real property is involved in the action.

The plaintiff's choice of forum is entitled to "great deference" and is a "paramount consideration" in deciding whether to grant a defendant's transfer request. *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 24 (D.D.C. 2002); *see also Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2005) ("Courts give considerable deference to the plaintiff's choice of forum."). In deciding whether a transfer is appropriate, "unless contradicted by an evidentiary showing, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor." *Jyachosky v. Winter*, 2006 WL 1805607, at *1 (D.D.C. Jun. 29, 2006) (citations and internal quotations omitted). Notwithstanding, even where the plaintiff's choice of venue is found to be proper under 28 U.S.C. §1391(e), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a). In the case at bar, the Defendants seek a transfer pursuant to 28 U.S.C. §1404(a) to the U.S. District Court for the Southern District of Florida, where, they contend, "venue is more appropriate." Transfer Motion at 1.

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC 20036
Phone: 202-483-0053 Fax: 202-483-6801

7

As the moving party, the Defendants bear the "heavy burden" of demonstrating that a transfer to the Southern District of Florida is proper. *See Pain v. United Tech. Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980); *Shenandoah Assoc. Ltd. Partnership v. Tirana*, 182 F. Supp. 2d 14, 25 (D.D.C. 2001); *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001). The Court is afforded broad discretion to decide whether transfer is warranted, employing "an 'individualized, case-by-case consideration of convenience and fairness'" and honoring a plaintiff's venue selection unless "the balance of private and public interests weighs in favor of transfer." *Abusadeh v. Chertoff*, Slip Copy, 2007 WL 2111036, at *3-4 (D.D.C. July 23, 2007) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also SEC v. Savoy Indus., Inc.*, 587 F.3d 1149, 1154 (D.C. Cir. 1978). Such deference is lessened, however, if the Plaintiff's forum choice "lacks meaningful ties to the controversy and [has] no particular interest in the parties or subject matter." *Islamic Republic of Iran v. Boeing Co.*, 477 F. Supp. 142, 144 (D.D.C. 1979); *see also Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86. Moreover, the Defendants' burden in a motion to transfer decreases if it is shown that the Plaintiff's choice of venue "has *no meaningful nexus* to the controversy and the parties." *Greater Yellowstone*, 180 F. Supp. 2d at 128 (emphasis added); *Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10, 12 (D.D.C. 2000).

Under 18 U.S.C. §1404(a), the Defendants, who bear the burden of establishing that a transfer is appropriate, must make two showings to justify their desired change of venue. *See Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 65 (D.D.C. 2003); *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996). First, the Defendants must demonstrate that the Plaintiff could have brought this action in the proposed transferee district. *Sierra Club*, 276 F. Supp. 2d at 65; *see also Van Dusen*, 376 U.S. at 622. Second, the Defendants must establish that

considerations of convenience and the interest of justice weigh in favor of a transfer to the Southern District of Florida. *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86; *Trout Unlimited*, 944 F. Supp. at 16. As to the second factor, the Court must weigh a number of case-specific private-interest and public-interest factors and "transfer a case *only* if the balance of private and public interests weighs in favor of transfer." *Abusadeh*, 2007 WL 2111036, at *4 (emphasis added); *Greater Yellowstone*, 180 F. Supp. 2d at 127; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

The private-interest factors include the following: (1) the Plaintiff's choice of forum; (2) the Defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof. *Sierra Club*, 276 F. Supp. 2d at 65; *Trout Unlimited*, 944 F. Supp. at 16. The Court also evaluates the following public-interest considerations: (1) the degree to which the courts in both venues are familiar with the governing laws; (2) the relative congestions of the calendars of the transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *See Abusadeh*, 2007 WL 2111036, at *4; *see also Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995); *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86.

## IV.     TRANSFER OF THIS ACTION TO THE SOUTHERN DISTRICT OF FLORIDA IS NOT WARRANTED

The Defendants argue that venue for this action "is more appropriate in the Southern District of Florida" and consequently move this Court to transfer the case pursuant to 28 U.S.C. §1404(a). Transfer Motion at 1. The Defendants' motion is unpersuasive and should be denied, because relevant private-interest considerations, public-interest considerations, and the interest of justice all weigh against a transfer out of this District.

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

9

### A.     Private-Interest Consideration Weigh Against a Transfer

For the following reasons, the private-interest factors weigh in favor of keeping this case in the District of Columbia.  *See, e.g.*, *Trout Unlimited*, 944 F. Supp. at 16 (defining the relevant private interests as (1) the Plaintiff's choice of forum; (2) the Defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses; and (6) the ease of access to sources of proof).

### 1.     The Plaintiff's choice of forum is entitled to deference.

In evaluating the Defendants' motion, this Court must first determine whether venue in this District is proper for the Plaintiff's claims, before turning to the threshold question whether this action "might have been brought" in the Southern District of Florida.  *Van Dusen*, 376 U.S. at 616; *Abusadeh*, 2007 WL 2111036, at *3.  At the outset, as the Plaintiff argued in her Complaint, venue properly lies in the District of Columbia because three of the four named Defendants reside in this District and national policy concerning adjudication of applications for immigration benefits, such as adjustment of status to lawful permanent resident and imposition of required background and security checks, is formulated by the DHS and implemented by CIS and the FBI.  *See Abusadeh*, 2007 WL 2111036, at *5; *Greater Yellowstone*, 180 F. Supp. 2d at 128-29; Complaint ¶9. Accordingly, the Plaintiff's choice of forum merits deference.  *See Shawnee Tribe*, 298 F. Supp. 2d at 24 ("[A] plaintiff's choice of forum is afforded great deference, and is a 'paramount consideration' in any determination of a motion to transfer.") (quoting *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F. Supp. 22, 25 (D.D.C. 1997)); s*ee also Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86 ("The moving party 'bear[s] a heavy burden of establishing that plaintiffs' choice of forum is

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

10

inappropriate.'") (quoting *Pain v. United Tech. Corp.*, 637 F.2d 775, 784 (D.C. Cir. 1980)); *Darby v. United States Dep't of Entergy*, 231 F. Supp. 2d 274, 276-77 (D.D.C. 2002); *Greater Yellowstone*, 180 F. Supp. 2d 124, 127 (D.D.C. 2001); *Trout Unlimited*, 944 F. Supp. at 16.

### 2.    The Defendants' choice of forum is not entitled to deference.

Turning to whether the Court nonetheless ought to transfer venue to a different jurisdiction, under the discretionary language of 28 U.S.C. §1404(a), the Defendants contend that the Plaintiff's choice of forum "deserves little deference because she does not reside in this District, and because this District 'lacks meaningful ties to the controversy.'"  Transfer Motion at 5 (quoting *Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82, 86 (D.D.C. 2005)). The Plaintiff does not dispute that this is an action which "might have been brought" in the Southern District of Florida, as she herself resides there.  *See* 28 U.S.C. §1391(e).  However, the Defendants' insistence that the District of Columbia "lacks meaningful ties to the controversy" is plainly belied by the evidence.

Specifically, as described in Section II., *supra*, the Plaintiff was informed by two independent sources in April 2007 that her case had been transferred from the Miami District Office of CIS to "Central Office Washington" and that it was "at USCIS HQ for review."  *See* Exhs. 1, 2.   Although the Plaintiff's specific inquiry at that time concerned the delay in adjudicating her Form I-131 Application for Travel Document, as she had a pressing business need to travel outside the United States, the responses to her inquiries confirmed that her entire adjustment of status case "is hung up in security-related background checks."  Exh. 1.  In fact, the CIS Liaison advised that "[s]omeone at HQ will have to address this inquiry for you" because the case "was relocated to Central Office Washington on 1-5-07."  Exh. 2.  Moreover, the AILA

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

11

Liaison from whom the Plaintiff sought assistance counseled that "[o]nly a federal court mandamus can move a case stuck in background checks." Exh. 1.

This evidence clearly undermines the Defendants' insistence that the District of Columbia "lacks meaningful ties to the controversy." Transfer Motion at 5; *see Greater Yellowstone*, 180 F. Supp. 2d at 128-29 (denying motion to transfer where "operative facts and impact of this case are linked to" District of Columbia); *Wilderness Soc'y*, 104 F. Supp. 2d at 14 (denying transfer away from District of Columbia where evidence established federal government official's "heavy involvement" in decision-making process). C*f. Abusadeh*, 2007 WL 2111036, at *6 (holding that "Plaintiff's choice of forum is entitled to less than ordinary deference as … this action bears no 'meaningful ties' to the District of Columbia"); *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 86 (same); *Sierra Club*, 276 F. Sup. 2d at 67 (finding that "the parties' presence in the District of Columbia is overshadowed by the lack of evidence that federal officials in this forum played 'an active or significant role' in the decision" at issue in the case) (quoting *Airport Working Group of Orange County, Inc. v. United States Dep't of Defense*, 226 F. Supp. 2d 227, 230 (D.D.C. 2002)).

Furthermore, in support of their Transfer Motion, the Defendants have submitted a sworn declaration from Maria Aran, Chief of Staff for CIS's Miami and Caribbean (MAC) District Office. *See* Transfer Motion, Aran Decl. Ms. Aran acknowledges that the Plaintiff filed her adjustment application on July 11, 2003, with the Texas Service Center located in Mesquite, Texas, and that the application was subsequently transferred to the Miami District in November 2003. *Id.* Curiously, though, Ms. Aran fails to reveal that the Plaintiff's immigration file was subsequently transferred to "USCIS HQ" or "Central Office Washington" in January 2007. *See* Exhs. 1, 2. Because the responses that the Plaintiff received to her inquiries reveal that her case

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

12

was, for some period of time, transferred to CIS Headquarters in Washington, this is not a case where "there was no Washington-level involvement in any part of the decision-making process" or where "federal officials in the District of Columbia did not play an active role" in the complained-of delay. *Sierra Club*, 276 F. Supp. 2d at 68. To the contrary, the evidence indicates that "federal officials in this forum played an 'active or significant role'" in the processing of background and security checks on the Plaintiff. *Sierra Club*, 276 F. Supp. 2d at 67; *see Greater Yellowstone*, 180 F. Supp. 2d at 128-29 (deferring to plaintiffs' choice of forum in part because federal officials in District of Columbia were involved in grazing-permit decision at issue); *cf. Airport Working Group*, 226 F. Supp. 2d at 230 ("[T]here is *no* evidence to suggest that [government] officials had an active or significant role in this matter.") (emphasis added); *Trout Unlimited*, 944 F. Supp. at 16-18 (noting that none of the decision-making occurred in the District of Columbia); *see* Exhs. 1, 2.

This conclusion is further bolstered by the nature of the background check process itself, which has apparently forestalled adjudication of the Plaintiff's adjustment application. In her declaration, CIS Chief of Staff Aran indicates that the checks to which the Plaintiff has been subjected include "the FBI Name Check, FBI fingerprint check, and the DHS-managed Interagency Border Inspection System (IBIS)." Transfer Motion, Aran Decl. ¶4. Ms. Aran attests: "USCIS may not proceed with the adjudication of this matter until the (sic) all three required background checks have been initiated, completed by other law enforcement agency (sic), and clearance has been obtained." *Id.* ¶10. Furthermore, "[u]pon completion of all background checks, it is anticipated that a decision on plaintiff's application for adjustment of status will be rendered. . . . [T]he decision denying or approving said application would be issued by the MAC district." *Id.* ¶11.

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC 20036
Phone: 202-483-0053 Fax: 202-483-6801

13

According to the Defendants, therefore, CIS may not even proceed with the adjudication of the Plaintiff's adjustment application until the FBI name, FBI fingerprint, and IBIS checks are completed. Only *after* this process has been concluded will a decision to either approve or deny the Plaintiff's application be issued by the CIS Miami District Office. These facts contradict the Defendants' insistence that "venue is more appropriate in the Southern District of Florida" because "the processing and adjudication of Poliakova's I-485 either ha[s] transpired or will occur at the USCIS Miami District Office in Miami, Florida"; that "this case concerns the conduct of USCIS officials in Miami"; and that "the people involved in making the determination as to Ms. Poliakova's application are located in Miami." Transfer Motion at 1-2, 7, 8-9. To the contrary, the processing of requisite background and security checks – which is the admitted source of delay in adjudicating the Plaintiff's adjustment application – takes place *outside* the Miami District Office of CIS.

The FBI fingerprint check process, according to the agency's website, occurs via the Integrated Automated Fingerprint Identification System ("IAFIS"), which is, in turn, a feature of the FBI's Criminal Justice Information Services ("CJIS"). *See* Exh. 4 (attached hereto). The IAFIS provides automated fingerprint data to CIS and other federal agencies by searching "the largest biometric database in the world, containing the fingerprints and corresponding criminal history information for more than 47 million subjects[.]" *Id.* Likewise, the FBI name check process refers to the National Name Check Program ("NNCP"), which is also a component of the CJIS. *See* Exh. 5 (attached hereto). According to the FBI, "employees of the NNCP review and analyze potential identifiable documents to determine whether a specific individual has been the subject of or mentioned in any FBI investigation(s), and if so, what (if any) relevant information may be disseminated to the requesting agency." *Id.* CJIS is located in the FBI's extensive

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

14

complex in West Virginia, and employees who conduct the IAFIS and the NNCP are physically located in that facility.  *See* Exh. 6 (attached hereto).

Clearly, therefore, the Defendants' argument that "a substantial part of the events or omissions giving rise to Poliakova's claim occurred in the Southern District of Florida" and "any alleged delay in the processing of Poliakova's applications is a matter related to the USCIS Miami District Office" is also refuted by evidence describing the FBI name and fingerprint checks.  Transfer Motion at 4-5; *see* Exhs. 4-6.  It is undisputed that these checks are a source of the complained-of delay in the Plaintiff's case.  *See* Transfer Motion, Aran Decl. ¶5 ("USCIS must await responses from the FBI or other agencies that conduct some of the required security checks"); ¶10 ("USCIS may not proceed with the adjudication of this matter until the (sic) all three required background checks have been initiated, completed by other law enforcement agency (sic), and clearance has been obtained"); ¶11 ("Upon completion of all background checks, it is anticipated that a decision on plaintiff's application for adjustment of status will be rendered.").  Contrary to the Defendants' allegations, the "private interests" in this case do *not*, in fact, favor a transfer to the Southern District of Florida, because the "primary issue in this case" concerns decisions (on routine background and security checks) made *outside* the CIS Miami District Office.  Transfer Motion at 6; *see Greater Yellowstone*, 180 F. Supp. 2d at 129; *Wilderness Soc'y*, 104 F. Supp. 2d at 14; *cf., e.g.*, *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 87; *Sierra Club*, 276 F. Supp. 2d at 67-68; *Shawnee Tribe*, 298 F. Supp. 2d at 24; *Airport Working Group*, 226 F. Supp. 2d at 230-31.

### 3.     *The Plaintiff's claim arose in this District.*

Next, the Court looks to whether the action arose somewhere outside the Plaintiff's chosen forum.  *E.g.*, *Sierra Club*, 276 F. Supp. 2d at 67.  In *Abusadeh v. Chertoff*, for example,

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

15

this Court granted the government defendants' transfer request, in part, because the plaintiff had previously filed a district court action in another jurisdiction – presenting the same factual allegations but different legal theories – and "only brought suit here after being *denied* the relief he sought in the Southern District of Texas."  *Abusadeh*, 2007 WL 2111036, at *5 (emphasis added).  No such facts exist here; to the contrary, the Plaintiff brought her original action in this Court and articulated in her Complaint valid reasons why venue is proper in this district.  *See* Complaint ¶9.  For this reason as well, the Court should defer to the Plaintiff's choice of forum.

### 4.    *The convenience of the parties does not favor a transfer.*

The convenience of the parties carries no weight where the "action involves an administrative review that the court is likely to determine on the papers," as in this case.  *Sierra Club*, 276 F. Supp. 2d at 69.  Furthermore, the dispositive issue in this mandamus lawsuit is the delay in adjudicating the Plaintiff's adjustment application owing to uncompleted security and background checks.  Processing and completion of those checks occurs outside the Southern District of Florida.  *See* Exhs. 4-6.  As the Defendants themselves concede, the Miami District Office of CIS "*may not proceed* with the adjudication of this matter until the (sic) all three required background checks have been initiated, completed by other law enforcement agency (sic), and clearance has been obtained."  Transfer Motion, Aran Decl. ¶10 (emphasis added).  Admittedly, the ultimate "decision denying or approving said application" will be "issued by the MAC district."  *Id.* ¶11.  However, that decision – whether to grant or deny the Plaintiff's adjustment application – is not at issue in this lawsuit; in fact, such a discretionary determination appears to be immune to judicial review.  *See* INA §242(a)(2)(B)(ii), 8 U.S.C. §1252(a)(2)(B)(ii).

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

16

The action before this Court pertains solely to the Defendants' unreasonable delay. *See, e.g.*, *Liu v. Novak*, Slip Opinion, 2007 WL 2460425, at *7 (D.D.C. Aug. 30, 2007) (finding that "28 U.S.C. §1331, in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld"). Accordingly, the Defendants have failed to identify any "local interest in resolving" this case in the Southern District of Florida, as the complained-of delay in adjudication is the result of background and security checks occurring outside the Miami District. Transfer Motion at 8; *cf., e.g.*, *Rosales v. United States*, 477 F. Supp. 2d 213, 216 (D.D.C. 2007) (granting transfer request because "this dispute involves individuals, real property, and Native American cultural items that are exclusively located in the Southern District of California"). Moreover, three of the four Defendants have offices in the District of Columbia. *See Greater Yellowstone*, 180 F. Supp. 2d at 129; *see also Abusadeh*, 2007 WL 2111036, at *5 ("Thus, on the face of the venue statute, it appears that venue properly lies in the District of Columbia because three of the four named Defendants in this case 'reside' in the District of Columbia.").

**5.    *The convenience of the witnesses does not favor a transfer.***

For the same reason, the convenience of the witnesses likewise "is not a significant factor." *Sierra Club*, 276 F. Supp. 2d at 69; *Airport Working Group*, 226 F. Supp. 2d at 231 (finding that "the convenience of witnesses is likely to be of no relevance since this is a review of an administrative decision"); *cf. Rosales* , 477 F. Supp. 2d at 216 (granting request to transfer where "many witnesses, Plaintiffs' counsel, and Plaintiffs themselves reside in California, most of them in the Southern District"); *Trout Unlimited*, 944 F. Supp. at 18 (finding transfer from District of Columbia to District of Colorado appropriate because "the affected public, the water users and residents of [the affected body of water], are located in Colorado"). The Plaintiff

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

17

anticipates that her mandamus complaint will be decided solely on the pleadings and, should the Court deem necessary, argument by counsel, without the need for witnesses or testimony.

In addition, the Plaintiff's counsel is located in Washington, D.C., as is counsel for the Defendants. The Plaintiff herself has no objection to traveling to this District, if necessary, to litigate the case. Therefore, unless the Court intends to grant the Plaintiff permission to conduct discovery, there is no basis for the Defendants' claim that "it will be more convenient to litigate this case in the Southern District of Florida." Transfer Motion at 8; c*f. Joyner v. District of Columbia*, 267 F. Supp. 2d 15, 21 (D.D.C. 2003) (finding that "interest of justice and convenience of the parties and witnesses" justify transfer to district "where the prison of Frank Joyner's murder is located, where the records and other physical evidence will be found, and where it is likely that most of the potential witnesses are located").

### 6.    Ease of access to sources of proof does not favor a transfer.

Finally, the ease of access to sources of proof is of little significance, where the Court will likely decide this case on the administrative record. *See Air Line Pilots Ass'n v. Eastern Air Lines*, 672 F. Supp. 525, 527 (D.D.C. 1987) (noting that since the record had to be shipped to the parties' District-based counsel, it was not "a significantly greater hardship" to send a copy to the courthouse as well). Although the Defendants insist that "this case concerns the conduct of USCIS officials in Miami, not the agency headquarters or officials in Washington, D.C.," Transfer Motion at 7, the evidence contradicts that assertion. *See* Exhs. 1, 2, 4-6. Again, unless the Court is prepared to grant the Plaintiff permission to conduct discovery, in order to fully investigate the source(s) of delay in processing her application, no witnesses or additional documents are needed to decide the Plaintiff's mandamus action.

### B.    Public-Interest Considerations Weigh Against a Transfer

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

18

The public-interest factors in this case also weigh against a transfer of venue. *See Trout Unlimited*, 944 F. Supp. at 16 (defining the relevant public interests as (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home).

### 1.    *Transferee's familiarity with governing laws.*

First, with respect to the transferee's familiarity with governing laws, this case involves interpretation of federal statutes. The Plaintiff's complaint seeks this Court's intervention under the mandamus and federal question statutes and the APA, owing to Defendants' unreasonable delay in adjudicating her adjustment of status application. *See* Complaint ¶¶1-4, 35-39; *see also Liu v. Novak*, Slip Opinion, 2007 WL 2460425, at *7 (D.D.C. Aug. 30, 2007) (finding that "28 U.S.C. §1331, in combination with the APA, vests the court with jurisdiction to compel agency action that is unreasonably delayed or withheld"). In other cases where this Court has found transfer to be warranted, the suits involved a localized dispute with little national significance and the alternative venue was more familiar with governing laws. *See, e.g.*, *Southern Utah Wilderness Alliance*, 315 F. Supp. 2d at 88-89; *Sierra Club*, 276 F. Supp. 2d at 71; *Trout Unlimited*, 944 F. Supp. at 19. By contrast, this case does not involve any issues of state or local law and, instead, touches upon an issue of national significance – delays in the processing of applications for immigration benefits as a result of required security background checks. Hence, there is no advantage to having a federal court in Miami, which might be more familiar or experienced with Florida state law, adjudicate this action, which pertains exclusively to federal laws that have nationwide application. *See* Complaint ¶¶3-6, 35, 38.

### 2.    *Relative congestion of Courts' respective calendars.*

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

19

Second, the Defendants have offered no evidence regarding the relative congestion of this Court versus the U.S. District Court for the Southern District of Florida. Consequently, this factor likewise does not "alter[] the balance in favor of transfer." *Abusadeh*, 2007 WL 2111036, at *8.

### 3. *Local interest in deciding local controversies.*

Third, although the Defendants assert that "[s]ince this case arose in the Southern District of Florida, there is local interest in resolving it there," Transfer Motion at 8, they fail to identify any compelling local interest that favors a transfer. In truth, this case arose in Mesquite, Texas, where the Plaintiff originally filed her application for adjustment of status; it was subsequently transferred to Miami, where the Plaintiff was interviewed; it was then sent to CIS Headquarters in Washington, D.C., apparently in connection with the processing of required background and security checks; and it has purportedly now been returned to Miami, where the CIS District Office will issue a decision on the application once all background checks have been completed. *See* Transfer Motion, Aran Decl. ¶¶10-11. This is not a case, therefore, where local interest or local impact tips the public-interest balance in favor of a transfer. *See Greater Yellowstone*, 180 F. Supp. 2d at 129-30; *Wilderness Soc'y*, 104 F. Supp. 2d at 13-14; *cf., e.g.*, *Shawnee Tribe*, 298 F. Supp. 2d at 27 (finding a compelling "local interest" favoring transfer where resolving the controversy at issue "would require not only knowledge and experience in interpreting Native American Indian treaties, but examination of local property records and deeds and other documents"); *Airport Working Group*, 226 F. Supp. 2d at 231 (noting that the dispositive issue in the case "will have a profound effect on the local environment and the use of local resources").

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC 20036
Phone: 202-483-0053 Fax: 202-483-6801

Finally, this Court has previously cautioned that a transfer is disfavored if the possibility exists that the defendants are forum-shopping. *See Greater Yellowstone*, 180 F. Supp. 2d at 129; *see also Ferens v. John Deere Co.*, 494 U.S. 516, 527 (1990).

### C.     Transfer of this Case Will Result in Further Unreasonable Delay

Most significantly, however, a grant of the Defendants' motion to transfer would unavoidably lead to further, unnecessary delay. As counsel for the Defendants asserts: "[I]f this case is transferred to the Southern District of Florida, the undersigned will not be counsel for Defendants, and the United States Attorney's Office for the Southern District of Florida will assume responsibility for the case. The Assistant United States Attorney from that office *will need time to become familiar with the case* once the file is received …." Transfer Motion at 10 (emphasis added). The prospect of such additional delay weighs heavily against a grant of the Defendants' transfer request, where the Plaintiff has already waited more than four years for her adjustment of status application to be adjudicated. *Cf. Trout Unlimited*, 944 F. Supp. at 19 (granting government's transfer request where "[i]t is not evident that a transfer to the northern district of Colorado will lead to unnecessary delay").

The Defendants fail to explain how their transfer request "would promote efficiency and conserve resources." Transfer Motion at 10. Quite the contrary, shuttling this case to the Southern District of Florida would have a severe dilatory effect, which cannot reasonably be regarded as "in the interest of justice." 28 U.S.C. §1404(a); *see also Liu*, 2007 WL 2460425, at *9 ("Based on the nature of the security check process, the findings of other courts, and the prejudice to the plaintiff, the Court concludes that the present four-year delay in adjudicating plaintiff's application is unreasonable. Though they had ample opportunity, defendants have

Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC 20036
Phone: 202-483-0053 Fax: 202-483-6801

21

failed to provide information that would allow the Court to find plaintiff's interests outweighed by the impact of a remedy on other agency activities.").

## V.    CONCLUSION

Based on the foregoing, it is clear that the Defendants have failed to satisfy their heavy burden under 28 U.S.C. §1404(a) of demonstrating that a transfer of venue to the Southern District of Florida would serve the interest of justice and the convenience of the parties and witnesses in this case.  The Plaintiff therefore urges this Court to deny the Defendants' motion to transfer, deny the request for further extension of time to file an answer, and grant the relief sought by the Plaintiff in her mandamus complaint, to wit, order the Defendants and those acting under them to take all appropriate action to perform their duty to adjudicate the Plaintiff's adjustment of status application without further delay.


Respectfully submitted this 29th day of October 2007,

NATALIA V. POLIAKOVA

*By counsel,*


_____/s/_____
Thomas K. Ragland
DC Bar Number: 501021

MAGGIO & KATTAR
11 Dupont Circle, NW, Suite 775
Washington, DC 20036
Phone:  (202) 483-0053
Fax:  (202) 483-6801

*Counsel for Plaintiff*


Thomas K. Ragland
MAGGIO & KATTAR
11 Dupont Circle, NW Suite 775
Washington, DC  20036
Phone: 202-483-0053  Fax: 202-483-6801

22

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

NATALIA V. POLIAKOVA          )
                               )
        Plaintiff,             )
                               )
v.                             )          Civ. No. 07-1210 (RCL)
                               )
EMILIO T. GONZALEZ, Director   )
U.S. Citizenship and Immigration Services, et al.,   )
                               )
        Defendants.            )
_____)

## CERTIFICATE OF SERVICE

I, Thomas K. Ragland, hereby certify that on this the 29th day of October, 2007, I filed the foregoing Plaintiff's Opposition to Defendants' Motion to Transfer and for Enlargement of Time to File Answer, Supporting Exhibits 1-6, and Proposed Order via Electronic Case Filing System, and therefore caused to be served a true and correct copy electronically upon:

Robin M. Meriweather
Assistant U.S. Attorney
555 Fourth Street, NW
Washington, DC 20530


_____/s/_____
Thomas K. Ragland

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
NATALIA V. POLIAKOVA                    )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )        Civ. No. 07-1210 (RCL)
                                        )
EMILIO T. GONZALEZ, Director            )
U.S. Citizenship and Immigration Services, et al.,  )
                                        )
        Defendants.                     )
_____)


**<u>PROPOSED ORDER</u>**

Upon consideration of Defendants' Motion to Transfer and for Enlargement of Time to File Answer and Plaintiff's Opposition thereto, it is hereby ORDERED that said motion is DENIED.

Done and ordered this _____ day of _____, 2007.


_____
Judge Royce C. Lamberth
U.S. District Court Judge

## A F F I D A V I T OF NATALIA V. POLIAKOVA

1.     I am Natalia V. Poliakova, a Russian citizen and an applicant for Adjustment of Status to U.S. lawful permanent resident.    I am a sole owner and President of a Florida corporation, Natalia V. Poliakova, P.A., a law firm, located in Aventura, Florida.

2.     The following is the history of case status inquiries made since initial filing of I-140/I-485/I-765/I-131 package with Texas Service Center on July 10, 2003:

- *07/11/2003 [RECEIPT NOTICE SAYS 7/10/03]* - I filed an Application to Adjust Status, Form I-485, along with Forms I-765 (employment authorization) and I-131 (advance parole travel document), with the Texas Service Center. On *11/14/2003*, the case was transferred to the Miami District Office;

- *11/22/2004* - I was interviewed by the Adjudication Officer in Miami;

- *11/23/2004* - I was fingerprinted;

- *08/30/2005* - I submitted South Florida AILA Liaison Assistance Inquiry, and on *10/05/2005* Bruce L. Marmar at Miami District Office replied *"that the case is still pending Security Check"*;

- *09/19/2005* - I submitted (via hand delivery) Request for Status of Adjudication to Miami District Office of USCIS;

- *08/16/2006* - I submitted Texas Service Center AILA Liaison Assistance Inquiry and received responses that as of *06/22/2006* *"the Adjustment Application is pending due to FBI background check"*;

- *08/16/2006* - I submitted Miami District request for AILA Liaison Assistance Inquiry, and received response that *"the case is pending file review. We will forward your Inquiry to the unit handling this case"*;

- *08/28/2006* - I personally submitted Status Inquiry at the time of my INFOPASS appointment on temporary Employment Authorization Document;

- *11/01/2006* - I submitted Request for Congressional Assistance to Congresswoman Debbie Wasserman-Schultz. On *05/09/2007* I received a response that *"we have checked into your constituent's case and have been assured that the agency is aware of your inquiry and is monitoring progress of the case"*;

- *01/05/2007* – According to Congressional Liaison Matthew J. Elliott at USCIS National Benefits Center, case was *"relocated to "Central Office Washington"*;

- *03/13/2007* - I telephoned the National Customer Service center regarding adjudication status of my I-485 and I-131, and on *06/16/2007* I received a written response that *"based on your request we researched the status of this case. We are actively processing this case. However, we have to perform additional review on this case and this has caused a longer processing time. If you do not receive a decision or other notice of action from us within 6 months of this letter, please call customer service"*;

- *04/19/2007* - I submitted AILA National Benefits Center Liaison Assistance Form regarding processing of my I-131, and on *04/25/2007* I received a response from Gerald C. Rovner, stating that *"this case is at USCIS HQ for review. Please contact them (Congressional/Liaison Office) for further information."* Mr. Rovner suggested to re-address my AILA inquiry to USICS Liaison, Shawn Orme and forwarded my inquiry to Bob Deasy at AILA. Mr. Deasy replied that *"...I think your case is hung up in security-related background checks... Liaison can't move a case that is in background checks. Only a federal court mandamus can move a case stuck in background checks"*;

3.   Since October of 2004, I represent NASA's largest contractor, United Space Alliance, LLC, in its negotiations with the Russian Space Agency. Since that time through the present time, United Space Alliance continuously performs various background checks, including but not limited to the following public "Check Lists":

<u>Bureau of Industry and Security, Department of Commerce</u>: Denied Persons List, Unverified List, Entity List, Specially Designated Nationals List, Debarred List

<u>Specially Designated Nationals (Department of Treasury)</u>: This is a list of persons, acting for or on behalf of, and companies owned or controlled by targeted countries. The list includes individuals, groups, and entities, such as terrorists and narcotics traffickers, who are designated under programs that are not country-specific and have their assets blocked. U.S. persons are generally prohibited from dealing with those listed.

Directorate of Defense Trade Controls, Lists of Parties Debarred for AECA Convictions
http://www.pmddtc.state.gov/debar059intro.htm

- Statutory debarment remains in effect unless the debarred person's application for reinstatement of export privileges is granted by DDTC; notice of reinstatement will be published in the Federal Register and the person's name will be removed from the list. http://www.pmddtc.state.gov/debar059.htm
- In addition, persons may be "administratively debarred" on a case-by-case basis resulting from the resolution of individual enforcement proceedings for violations of the AECA and                                                                                                        ITAR. http://www.pmddtc.state.gov/debar_admin.htm

4.   I am a member of the Florida Bar since April 4, 2000. Completion of the background checks is a condition for admission to the Florida Bar.

5.      Since filing of my Application to Adjust Status I continuously filed Applications for Employment Authorization and Applications for Travel Document.

| Form Type | Filed on | Granted | Fee Paid |
|-----------|----------|---------|----------|
| I-131 (TSC) | 07/10/2003 | 03/02/2004 | $110.00 |
| I-765 (TSC) | 07/10/2003 | 07/25/2003 | $120.00 |
| I-131 (TSC) | 10/26/2004 | 01/25/2005 | $165.00 |
| I-765 (TSC) | 04/28/2004 | 08/04/2004 | $120.00 |
| I-131 (NBC) | 11/22/2005 | 03/01/2006 | $170.00 |
| I-765 (TSC) | 07/29/2005 | 07/29/2005 | $180.00 |
| I-131 (NBC) | 12/13/2006 | 04/30/2007 | $170.00 |
| I-765 (NBC) | 05/08/2006 | 08/28/2006 | $180.00 |
| I-765 (NBC) | 03/13/2007 | 08/28/2007 | $180.00 |

**FURTHER AFFIANT SAYETH NAUGHT.**

*Natalia V. Poliakova*
Natalia V. Poliakova

STATE OF FLORIDA         )
                           )     SS:
COUNTY OF MIAMI-DADE  )

     The foregoing instrument was acknowledged before me this _25_ day of October, 2007, by Natalia V. Poliakova

NOTARY PUBLIC-STATE OF FLORIDA
Paola DeVargas
Commission #DD682865
Expires: JUNE 06, 2011
BONDED THRU ATLANTIC BONDING CO., INC.

Personally known  _X_
*OR* Produced Identification  _____
Type of Identification Produced  _____

**Natalia V. Poliakova, J.D.**

| | |
|---|---|
| **From:** | Joanna Blazej [jblazej@rifkinfox.com] |
| **Sent:** | Tuesday, April 24, 2007 7:14 PM |
| **To:** | Natalia V. Poliakova, J.D. |
| **Subject:** | FW: Florida Bar Liaison |

Please see response.

---

**From:** Elliott, Matthew J **Sent:** Tuesday, April 24, 2007 6:13 PM
**To:** Joanna Blazej
**Subject:** RE: Florida Bar Liaison

Hi Joanna--

Someone at HQ will have to address this inquiry for you. I-131 MSC-07-800-48514 was relocated to Central Office Washington on 1-5-07.

Thanks,

**Matthew J. Elliott**
*Congressional Liaison*
**The National Benefits Center**
**US Citizenship & Immigration Services**
**DEPARTMENT** *of* **HOMELAND SECURITY**

**WARNING:** This document is **FOR OFFICIAL USE ONLY**. It contains information that may be exempt from public release under the Freedom of Information Act (5 U.S.C. 552). This document is to be controlled, handled, transmitted, distributed, and disposed of in accordance with DHS policy relating to **SENSITIVE BUT UNCLASSIFIED** information and is not to be released to the public or other personnel who do not have a valid need to know without prior approval from the originator.

Further transmission of **LAW ENFORCEMENT SENSITIVE** information is limited by The Privacy Act (5 U.S.C. 552(a)) and Trade Secrets Act (18 U.S.C. 1905), in accordance with the Third Agency Rule.

If you are not the intended recipient or agent responsible for delivering the information to the intended recipient, unauthorized disclosure, copying, distribution or use of the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify the sender and delete all copies from your system.

---

**From:** Joanna Blazej [mailto:jblazej@rifkinfox.com]
**Sent:** Tuesday, April 24, 2007 9:03 AM
**To:** NBC ATTORNEY LIAISON
**Subject:** Florida Bar Liaison

Dear Matt:

One of our fellow liaison members is having a problem as she filed an I-131 on December 13, 2006 and has not received the document. She has to fly to Russia on May 5th on business. As it is outside processing times can someone look at this for us please? See attached.

Regards,

4/27/2007



MAGGIO
KATTAR

Immigration              II Dupont Circle, NW        202.483.0053 tel
and                      Suite 775                   202.483.6801 fax
Nationality Attorneys    Washington, DC 20036        www.maggio-kattar.com

Our File No. 07-515

June 6, 2007

***BY FEDERAL EXPRESS # 859477301504***

Linda M. Swacina, District Director
Miami District Office
U.S. Citizenship and Immigration Services
7880 Biscayne Boulevard
Miami, FL 33138

RE:    **Notice of Intent to file WRIT OF MANDAMUS on behalf of Ms. Natalia V.
       POLIAKOVA (A97 621 385)
       Adjustment of Status Applicant**

Dear Ms. Swacina:

We write to notify you that we intend to file a complaint for a writ of mandamus with the
United States District Court for the District of Columbia, absent an immediate response
from your office regarding the above-referenced case. A Form G-28 Notice of Entry of
Appearance on behalf of Ms. Poliakova is attached for your reference.

Ms. Poliakova filed her application for adjustment of status (Form I-485) with the CIS
Texas Service Center on July 10, 2003, nearly four years ago. (Tab 1). Ms. Poliakova's
application is based on her approved immigrant petition for alien worker (Form I-140)
(Tab 2). CIS issued a receipt notice for Ms. Poliakova's adjustment of status application
on July 11, 2003. (Tab 3). On November 14, 2003, CIS Texas Service Center issued a
Transfer Notice indicating that Ms. Poliakova's case had been transferred to CIS Miami
District Office. (Tab 4). On November 3, 2004, CIS sent Ms. Poliakova an adjustment of
status interview notice, which she attended as directed on November 22, 2004. (Tab 5).
On June 6, 2005, Ms. Poliakova filed a Freedom of Information Act (FOIA) request in
order to review her file with CIS. (Tab 6). On September 9, 2005, Ms. Poliakova made
an inquiry with CIS regarding the status of her case. (Tab 7). Ms. Poliakova also
submitted an inquiry to CIS through the American Immigration Lawyers Association
(AILA). On October 5, 2005, the AILA Liaison informed her that her case was pending
due to security checks. (Tab 8). On August 16, 2006, Ms. Poliakova submitted another
inquiry via e-mail to the U.S. Department of Homeland Security. (Tab 9). No response
was received. On August 28, 2006, Ms. Poliakova submitted yet another inquiry to CIS
via a "Status Inquiry / Resolution Worksheet." (Tab 10).

Michael Maggio          Andrés C. Benach*      Sandra Grossman*      *Not admitted in
Elizabeth A. Quinn*     John Nahajzer          Nadeen AlJilakli*     Washington, DC
Melissa Frisk*          Amy R. Novick          Thomas Ragland*
James Alexander*        Cora D. Tekach



Linda M. Swacina, District Director
June 6, 2007
Page 2

Additionally, Ms. Poliakova submitted a congressional inquiry to U.S. Representative Debbie Wasserman Schultz. On November 1, 2006, Congresswoman Schultz informed Ms. Poliakova, "My office sent an inquiry on your behalf to the Congressional Liaison at the U.S. Citizenship and Immigration Service in Miami." (Tab 11). On November 28, 2006, Congresswoman Schultz sent Ms. Poliakova the Congressional Unit's response stating that her case was pending review and that Ms. Poliakova would receive a response in 60 days regarding the status of her case. (Tab 12). No response was received. On March 6, 2007, Ms. Poliakova sent yet another inquiry to Congresswoman Schultz regarding the status of her case. (Tab 13). In response, Congresswoman Schultz advised Ms. Poliakova on May 9, 2007 that CIS had responded to her inquiry by stating that background checks remained pending and that "the agency must balance individual inconvenience against broader issues of public safety and national security." (Tab 14). In addition to the above-mentioned inquiries, throughout this process Ms. Poliakova has made numerous in-person and telephonic status inquiries with CIS.

The Administrative Procedure Act ("APA") at 5 U.S.C. §§555(b) and 702 and the Immigration and Nationality Act ("INA") and its related regulations require CIS to carry out its duties within a reasonable time. 5 U.S.C. §555(b) provides that "[w]ith due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." (Emphasis added). CIS is subject to 5 U.S.C. §555(b). The delay of nearly four years in processing Ms. Poliakova's application for adjustment of status is patently unreasonable. Moreover, CIS's delay in adjudication has deprived Ms. Poliakova of several opportunities for professional advancement, and it has also caused serious interference with her travel needs and work schedule. Ms. Poliakova has also suffered a severe emotional burden as a result of these delays.

Both the regulations and the INA provide numerous examples of duties owed by CIS in the adjustment of status process. 8 U.S.C. §1103 states that "[t]he Attorney General *shall* be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens." (Emphasis added). The Code of Federal Regulations further provides that "[e]ach applicant for adjustment of status under this part *shall* be interviewed by an immigration officer." 8 C.F.R. §245.6 (emphasis added). The Regulations also provide that "the applicant *shall* be notified of the decision of the Director, and, if the application is denied, the reasons for the denial." 8 C.F.R. §245.2(5)(i) (emphasis added). The language of the statute and of the above-cited regulations is mandatory, not discretionary, and CIS has a clear duty to adjudicate the application for adjustment of status pending before it. *See First Federal Savings and Loan Association of Durham v. Baker*, 860 F.2d 135, 138 (4th Cir. 1988).



Linda M. Swacina, District Director
June 6, 2007
Page 3

We are eager to resolve this matter directly with CIS.  Nevertheless, if we do not receive a response to this request by July 3, 2007, we will have no choice but to proceed with the writ of mandamus in federal court.

We thank you for your kind attention to this matter. Please let us know if you have any questions.

Respectfully submitted,

**MAGGIO KATTAR**

Thomas K. Ragland

Cc:    CIS Counsel - Miami
          Ms. Natalia Poliakova

Enclosures: As Stated

Case 1:07-cv-01216-RCL    Document 84-3    Filed 10/29/2007    Page 1 of 4

# IAFIS

**Integrated Automated Fingerprint Identification System**

### Integrated Automated Fingerprint Identification System or IAFIS

### What is it?

About CJIS

NCIC

IAFIS

NICS

UCR/NIBRS

LEO

Compact Council

APB

COP

Fingerprint Identification

Directions to CJIS

The Integrated Automated Fingerprint Identification System, more commonly known as IAFIS, is a national fingerprint and criminal history system maintained by the Federal Bureau of Investigation (FBI), Criminal Justice Information Services (CJIS) Division. The IAFIS provides automated fingerprint search capabilities, latent searching capability, electronic image storage, and electronic exchange of fingerprints and responses, 24 hours a day, 365 days a year. As a result of submitting fingerprints electronically, agencies receive electronic responses to criminal ten-print fingerprint submissions within two hours and within 24 hours for civil fingerprint submissions.

The IAFIS maintains the largest biometric database in the world, containing the fingerprints and corresponding criminal history information for more than 47 million subjects in the Criminal Master File. The fingerprints and corresponding criminal history information are submitted voluntarily by state, local, and federal law enforcement agencies.

Just a few years ago, substantial delays were a normal part of the fingerprint identification process, because fingerprint cards had to be physically transported and processed. A fingerprint check could often take three months to complete. The FBI formed a partnership with the law enforcement community to revitalize the fingerprint identification process, leading to the development of the IAFIS. The IAFIS became operational in July 1999.



*" The rapid response of fingerprint identification through IAFIS makes it possible to identify fugitives while they are still in police*


Case 1:07-cv-04718-RCL    Document 12-3    Filed 10/29/2007    Page 2 of

*custody."*

**What are the IAFIS Services?**

The five key IAFIS services are:

**1 Ten-Print Based Fingerprint Identification Services**

A ten-print fingerprint submission contains ten-rolled fingerprint impressions and corresponding flat fingerprint impressions.

**Criminal Ten-Print Fingerprint Submission**

Fingerprints are acquired as a result of an arrest at the city, county, state or federal level. The fingerprints are processed locally and then electronically forwarded to a state or other federal agency system for processing. The fingerprints are then electronically forwarded through the CJIS Wide Area Network (WAN) to the FBI's IAFIS for processing. Mailed ten-print fingerprint cards are converted to an electronic format for processing in the IAFIS environment.

**Civil Ten-Print Fingerprint Submission**

Fingerprints are acquired related to a background check for employment, licensing, and other non-criminal justice purposes where authorized by federal and state law and in compliance with appropriate regulations. (To determine what occupations are authorized within your state, contact your state police or your state criminal history repository). Like criminal fingerprints, civil fingerprints are processed by local, state or other federal agencies prior to being submitted to the IAFIS for processing.

For information regarding taking legible fingerprints for ten-print fingerprint submissions, click on the link, "<u>Taking Legible Fingerprints</u>."

**2 Latent Fingerprint Services**

The IAFIS supports both electronic and hard copy submissions of latent fingerprints. The IAFIS provides the FBI's Laboratory with enhanced search capabilities using databases specially designed for matching latent fingerprints. Latent fingerprint specialists return decisions to the requestor and add any unidentified latent fingerprints and their features to the unsolved latent fingerprint file.

**3 Subject Search and Criminal History Services**

The Interstate Identification Index (III) segment of IAFIS is the national system designed to provide automated Criminal History Record Information (CHRI). The III stores the CHRI of federal offenders and those offenders established by participating and non-participating III states. Each III record is created through the submission of fingerprint images to IAFIS. The III participating states establish and update records within III through the submission of first and subsequent fingerprint images of arrested

subjects. Once these records are established, the III participating states provide requested criminal history records when an electronic inquiry for a state-maintained record is processed by the III system. States participating in the final stage of III as National Fingerprint File (NFF) participants, submit only the first arrest fingerprint images on a subject to establish a pointer record within the III segment. Any subsequent activity related to this NFF pointer record will be the sole responsibility of the NFF participating state. If a direct terminal inquiry or an IAFIS fingerprint inquiry identifies a person with a criminal history in one or more NFF participating states, a Criminal History Request is forwarded to the participating NFF state's criminal history system for the appropriate response.

 **Document and Imaging Services**

**Document Services** - The IAFIS processes documents associated with criminal history records received by electronic input, hard copy, or Machine Readable Data format. These documents include arrest dispositions, expungements, and other miscellaneous updates. For more information on criminal history document submission click on the link, "Arrest Disposition Submission."

**Fingerprint Image Services** - The IAFIS supplies electronic images of fingerprints to authorized agencies upon request. See the Electronic Fingerprint Transmission Specification (EFTS), Section 3.6-3.7 for more information.

**Photo Services** - The IAFIS has the capability to accept, store, and distribute photos. See the EFTS, Appendix K for information regarding photo submission and Section 3.10 for photo retrieval.

 **Remote Ten-Print and Latent Fingerprint Search Services**

The IAFIS supports remote ten-print and latent fingerprint searches by law enforcement agencies. The results of remote ten-print and latent searches are returned electronically and include a list of potential matching candidates and their corresponding fingerprints for comparison and identification by the requesting agency.

The FBI will provide the following remote search software packages to criminal justice agencies upon request, free of charge.

**Remote Fingerprint Editing Software** - The Remote Fingerprint Editing Software (RFES) is a complete software package that will perform remote searches of the IAFIS. RFES supports remote IAFIS transactions to include images and feature-based searches for both latent and ten-print fingerprints. RFES editing and human interface were developed based on use and advice of both local law enforcement and FBI latent specialists.

Additional information regarding RFES in PDF format

**Universal Latent Workstation Software** - The Universal Latent Workstation (ULW) is a latent software package that will perform remote latent searches of the IAFIS.

Additional information regarding ULW in PDF format or HTML

**IAFIS Interface Specifications**

The Electronic Fingerprint Transmission Specification or EFTS defines the interface between the IAFIS and other agencies' systems. The EFTS contains a description of operational concepts, descriptors, field edit specifications, image quality specifications, and other information related to IAFIS services. The Electronic Biometric Transmission Specification Version 8.0 (EBTS 8.0), released on September 24, 2007, is the latest upgrade to the FBI fingerprint specification and replaces Version 7.1. The scope of the EBTS 8.0 has been expanded over previous versions to include additional biometric modalities (e.g., palmprint, facial, and iris) in recognition of the rapidly developing biometric identification industry. The most recent update to the American National Standards Institute (ANSI)/National Institute of Standards and Technology (NIST)-Information Technology Laboratory (ITL) 1-2007 standard includes new record types to facilitate data sharing for new biometric modalities. Integrating biometric data in accordance with the ANSI/NIST standard, the FBI EBTS Version 8.0 provides a description of all requests and responses associated with electronic fingerprint and other biometric identification services. The EBTS Version 8.0, as well as all archived versions and other biometric standards information, can be found on the following website: www.fbibiospecs.org.

**Reference**

State and Country Codes for Place of Birth (POB) and Citizenship (CTZ)

How to Prevent IAFIS Ten-Print Rejects

**Contact Information**

For information regarding connectivity to IAFIS or latent capabilities, contact the CJIS Division at 304-625-2000.

For questions regarding IAFIS processing, call 304-625-5590.

---

| About CJIS | NCIC | IAFIS | NICS | UCR/NIBRS | LEO | APB | COP | Fingerprint Identification |
| Compact Council | Directions to CJIS | CJIS Homepage | FBI Homepage |

Last Updated 08/02/2005

Some of these publications are in PDF (Portable Document Format). To view them you will need to have the Adobe Acrobat Reader plug-in installed on your computer. The Reader can be downloaded at no cost from Adobe's site on the World Wide Web

---



Home | Site Map | FAQs

SEARCH

**Contact Us**
- Your Local FBI Office
- Overseas Offices
- Submit a Crime Tip
- Report Internet Crime
- More Contacts

**Learn About Us**
- Quick Facts
- What We Investigate
- Natl. Security Branch
- Information Technology
- Fingerprints & Training
- Laboratory Services
- Reports & Publications
- History
- More About Us

**Get Our News**
- Press Room
- E-mail Updates
- News Feeds

**Be Crime Smart**
- Wanted by the FBI
- More Protections

**Use Our Resources**
- For Law Enforcement
- For Communities
- For Researchers
- More Services

**Visit Our Kids' Page**

**Apply for a Job**

# National Name Check Program

**Mission:** The National Name Check Program's (NNCP's) mission is to disseminate information from FBI files in response to name check requests received from federal agencies including internal offices within the FBI; components within the legislative, judicial, and executive branches of the federal government; foreign police and intelligence agencies; and state and local law enforcement agencies within the criminal justice system.

**Purpose:** The NNCP has its genesis in Executive Order 10450, issued during the Eisenhower Administration. This executive order addresses personnel security issues, and mandated National Agency Checks (NACs) as part of the pre-employment vetting and background investigation process. The FBI is a primary NAC conducted on all U.S. government employees. Since September 11th, name check requests have grown, with more and more customers seeking background information from FBI files on individuals before bestowing a privilege—whether that privilege is government employment or an appointment, a security clearance, attendance at a White House function, a Green card or naturalization, admission to the bar, or a visa for the privilege of visiting our homeland. More than 70 federal and state agencies regularly request FBI name checks. In addition to serving federal, state, and local government customers, the NNCP conducts numerous name searches in direct support of the counterintelligence, counterterrorism, and homeland security efforts of the FBI.

**Function:** The employees of the NNCP review and analyze potential identifiable documents to determine whether a specific individual has been the subject of or mentioned in any FBI investigation(s), and if so, what (if any) relevant information may be disseminated to the requesting agency. It is important to note that the FBI does not adjudicate the final outcome, it just reports the results to the requesting agency.

**More Information**
- Frequently Asked Questions
- Executive Order 10450

**Congressional Testimony:**
- David Hardy 10-23-03
- Robert Garrity 07-10-03

**Source of Data:** The NNCP conducts manual and electronic searches of the FBI's Central Records System (CRS) Universal Index (UNI). The CRS encompasses the centralized records of FBI Headquarters, field offices, and Legal Attache offices. The CRS contains all FBI investigative, administrative, personnel, and general files.

**NNCP Process Step-by-Step:**

- Agency/entity submission to the FBI's NNCP. Submissions are accepted via magnetic tape, hard copy, telephone, or fax.
- Electronic "batch" submissions are searched against the UNI. The majority of the batch names are electronically returned as "no record" with 48-72 hours. A "no record" indicates that the UNI database contains no identifiable information regarding a particular individual. The UNI is searched for "main files", files where the name of an individual is the subject of an FBI investigation, and for "reference files", files where the name being searched is just mentioned in an investigation.
- A secondary "manual" search of residuals from the batch run identifies an additional number of names as a "no record" response.
- The remaining paper files and/or electronic files are reviewed to ensure they are germane to the name check request.
- Identifiable files are then analyzed for relevant or derogatory information that may be disseminated to the requesting agency/entity. Approximately 1 percent of the requests are determined to contain possible derogatory information. If applicable, the NNCP forwards a summary of the information to the submitting agency/entity.

**Growth of the Name Check Program:** Post September 11, 2001, the number of incoming name checks has increased to above pre-9/11 levels:

| | FY 01 | FY 02 | FY 03 | FY 04 | FY 05 |
|---|---|---|---|---|---|
| Incoming Name Checks: | 2,771,241 | 3,288,018 | 6,309,346 | 3,884,467 | 3,346,435 |

**Freedom of Information and Privacy Act (FOIPA) vs. Name Check:** Freedom of Information and Privacy Acts (FOIPA) requests are sometimes confused with name check requests. FOIPA provides copies of FBI files relevant to a specific FOIPA request. For FOIPA, the FBI search uses the name or information as provided in the FOIPA request. A FOIPA search determines whether there is an investigative file associated with an individual—a "main file" search. For a name check, "main files" and "reference files" are both checked, in addition to searching a name in a multitude of combinations.

**Major Contributing Agencies:** The FBI's NNCP Section provides services to more than 70 federal, state, and local governments and entities. Although most name checks are conducted for each agency on a first-in, first-out basis, the contributing agency determines the order of resolution for priority, project, or expedite cases. The following are the major contributing agencies to the NNCP:

- U.S. Citizenship and Immigration Services – Submits name check requests on individuals applying for the following benefits: asylum, adjustment of status to legal permanent resident, naturalization, and waivers.
- Office of Personnel Management – Submits name checks requests in order to determine an individual's suitability and eligibility in seeking employment with the federal government.
- Department of State – Submits FBI name check requests on individuals applying for visas. Not all visa matters require FBI name checks.

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links
Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. Federal Government, U.S. Department of Justice.

# FEDERAL BUREAU OF INVESTIGATION

Home | Site Map | FAQs

*Celebrating a Century 1908-2008*

SEARCH

## Criminal Justice Information Services

**Contact Us**
- Your Local FBI Office
- Overseas Offices
- Submit a Crime Tip
- Report Internet Crime
- More Contacts

**Learn About Us**
- Quick Facts
- What We Investigate
- Natl. Security Branch
- Information Technology
- Fingerprints & Training
- Laboratory Services
- Reports & Publications
- History
- More About Us

**Get Our News**
- Press Room
- E-mail Updates
- News Feeds

**Be Crime Smart**
- Wanted by the FBI
- More Protections

**Use Our Resources**
- For Law Enforcement
- For Communities
- For Researchers
- More Services

**Visit Our Kids' Page**

**Apply for a Job**



Our Criminal Justice Information Services or CJIS complex in West Virginia is home to a range of state-of-the-art technologies and statistical services that serve the FBI and the entire criminal justice community—from our annual crime stats to our automated fingerprint systems, from our secure communications channel for law enforcement to our gun background checks.



**Thomas E. Bush III**
Assistant Director, CJIS

**About CJIS**
- Overview
- CJIS Complex and Directions
- News and Stories

**Most Requested Services**
- IAFIS: Integrated Automated Fingerprint Identification System
- LEO: Law Enforcement Online
- NICS: National Instant Criminal Background Check System
- NCIC: National Crime Information Center
- UCR/NIBRS: Uniform Crime Reporting Program/National Incident-Based Reporting System

**More Programs**
- APB: Advisory Policy Board
- Bioterrorism Security Risk Assessment
- Compact Council
- Community Outreach Program
- N-DEx: Law Enforcement National Data Exchange

### All About Fingerprints

Along with IAFIS—our automated fingerprint ID system—we offer a range of information, training, and services related to fingerprints and criminal histories.

- Fingerprint Overview and History (pdf)
- Ordering Fingerprint Cards & Training Aids
- Our Checks on Bank Employees
- Requesting Your Fingerprint Record/Rap Sheet
- FBI Name Checks For Fingerprint Submissions (pdf)
- Submitting Arrest Dispositions
- Taking Legible Fingerprints
- Training: Fingerprints/Criminal History Records and Upcoming Classes

### Crime Stats

Get our range of crime stats past and present here on this website.

- 2006 Crime in the U.S.
- 2005 Crime in the U.S.
- 2005 Hate Crime stats
- 2005 Law Enforcement deaths/assaults
- More statistics

Accessibility | eRulemaking | Freedom of Information Act | Legal Notices | Legal Policies and Disclaimers | Links
Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. Federal Government, U.S. Department of Justice.