IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATALIA V. POLIAKOVA,                    §
                                         §
        *Plaintiff*,                     §
                                         §
v.                                       § CIVIL ACTION NO. 07-1210 (RCL)
                                         §
EMILIO T. GONZALEZ, DIRECTOR             §
UNITED STATES CITIZENSHIP AND            §
IMMIGRATION SERVICES (USCIS),            §
MICHAEL CHERTOFF, SECRETARY,             §
UNITED STATES DEPARTMENT OF              §
HOMELAND SECURITY,                       §
ROBERT S. MUELLER, DIRECTOR,             §
FEDERAL BUREAU OF INVESTIGATION,         §
LINDA SWACINA, DIRECTOR, MIAMI           §
DISTRICT OFFICE, USCIS                   §
                                         §
        *Defendants*.                    §
                                         §

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER AND MOTION
FOR ENLARGEMENT OF TIME TO FILE ANSWER**

This case involves a challenge to the United States Citizenship and Immigration Services

("USCIS") Miami District Office's adjudication of Plaintiff's application for lawful permanent

residence status, and should be transferred to the Southern District of Florida.  The Southern

District of Florida is the jurisdiction where Plaintiff's application has been, and will continue to

be, adjudicated.  It is also the district in which Plaintiff resides.  The only nexus between this

District and the case is the fact that two of the agency heads named as defendants have offices in

Washington, D.C.  However those officials will have no direct involvement in the adjudication

of Plaintiff's application.  Accordingly, this is a case in which "[b]y naming high government

officials as defendants, a plaintiff [is attempting to] bring suit here that properly should be

pursued elsewhere."  Cameron v. Thornburgh, 983 F.2d 253, 256 (D.C. Cir. 1993).

**ARGUMENT**

**I.    THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF FLORIDA.**

If every district court case involving an agency whose headquarters are located in Washington, D.C. were heard in this District, this Court's docket would quickly become unmanageable. Accordingly, the D.C. Circuit closely scrutinizes venue arguments based solely on federal agency defendants' presence in the District of Columbia. See Cameron, 983 F.2d at 256. Even when such defendants' presence makes venue technically proper in this District, courts frequently invoke their discretionary transfer authority pursuant to 28 U.S.C. § 1404(a) and transfer cases to districts with a closer nexus to the parties' dispute. See, e.g., Abusadeh v. Chertoff, 2007 WL 2111036, at *6-*9 (D.D.C. July 23, 2007) (transferring mandamus action seeking adjudication of adjustment of status application to Southern District of Texas because that was where the application was being adjudicated); Rosales v. United States, 477 F. Supp. 2d 213, 215-17 (D.D.C. 2007) (transferring case against federal agency to district in which the challenged events took place); Southern Utah Wilderness Alliance v. Norton, 315 F. Supp. 2d 82, 886-89 (D.D.C. 2005) (concluding environmental case should be transferred to Utah where D.C. officials only set general policies and did not make specific decisions being appealed); Joyner v. District of Columbia, 267 F. Supp. 2d 15, 20-21 (D.D.C. 2003) (holding that the case's only connection to Washington, D.C. was the situs of named federal government defendants and transferring to a district with which the case had several connections).

Section 1404(a) permits the Court to transfer this case to "any other district or division where it might have been brought" for the "convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). A threshold question is whether the case could have been brought in the district to which transfer is sought. Stewart Organization v. Ricoh Corp., 487 U.S.

22, 29 (1988) (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 613 (1964)).  Plaintiff concedes that

this action "might have been brought" in the Southern District of Florida.  <u>See</u> Opp. To Mot. To

Transfer ("Opp.") at 11 (Dkt. Entry 14).  Courts then conduct a case-by-case analysis and

balance the private interests of the parties with public interests such as efficiency and fairness.

<u>See</u> <u>id.</u> at 29; <u>Abusadeh</u>, 2007 WL 2111036, at *3.  Both the private and public interests favor

transfer to the Southern District of Florida.  Therefore, this case should be transferred to that

court.

> **A**.    **The Southern District of Florida Is A More Appropriate Forum Because
> That is Where Plaintiff's Adjustment of Status Application is Being
> Adjudicated.**

Plaintiff's choice of forum deserves little or no deference because she is not a

Washington, D.C. resident, and because this District "lacks meaningful ties to the controversy."

<u>Southern Utah Wilderness Alliance</u>, 315 F. Supp. 2d at 86; <u>see</u> <u>Shawnee Tribe v. United States</u>,

298 F. Supp. 2d 21, 24 (D.D.C. 2002) (deference lessened when the forum chosen is not the

plaintiff's home forum); <u>Abusadeh</u>, 2007 WL 2111036, at *8 ("[i]t is therefore clear that

Plaintiff's choice of forum is entitled to significantly less than ordinary deference in light of the

tangential connection between Plaintiff's complaint and Washington, D.C.").  As explained in

Defendants' motion to transfer and the declaration submitted therewith, federal officials in

Miami, Florida are responsible for adjudicating Poliakova's application for adjustment of status,

and will make the final decision regarding that application.  <u>See</u> Mot. To Transfer at 3-6 (Dkt.

Entry 11).  Given that this case concerns decisions made by a USCIS field office, the District in

which that field office is located is the appropriate forum for this suit.  <u>See, e.g.,</u> <u>Abusadeh</u>, 2007

WL 2111036, at *6-*9 (transferring to district in which USCIS field office was located); <u>Sierra</u>

<u>Club v. Flowers</u>, 276 F. Supp. 62, 67-68 (D.D.C. 2003) (transferring case because federal

officials in Florida made the relevant decision and officials in Washington, D.C. did not play an "active or significant" role in the decision-making process); <u>Fayyaz v. Dep't of Homeland Security</u>, No. 06-2016 (D.D.C. Oct. 25, 2007) (unpublished Order) (transferring mandamus action concerning I-485 to the Southern District of Texas because that is where plaintiffs resided and the district in which the USCIS office with jurisdiction over their applications was located) (Exh. 3 hereto)**;** <u>see also</u> Mot. To Transfer at 5-7 (citing additional cases).

The Southern District of Florida has a more significant interest in this case than this Court.  There is a local interest in resolving controversies where the relevant decisions are made. That interest applies to "controversies requiring judicial review of an administrative decision" to the same extent that it applies to cases involving real property or environmental issues. <u>Abusadeh</u>, 2007 WL 2111036, at * 8 (quoting <u>Sierra Club</u>, 276 F. Supp. 2d at 70).  The administrative decisions at issue in this case have been made in Miami, Florida.

Perhaps recognizing that the location of the relevant USCIS decisionmakers is dispositive of this venue dispute, Plaintiff goes to great lengths to suggest that the USCIS and Department of Homeland Security ("DHS") headquarters maintain control of the files and will adjudicate Plaintiff's adjustment of status application.  Plaintiff also contends that the FBI is conducting the name and fingerprint checks in West Virginia, and suggests that this supports venue in this Court.  Those arguments distort the relevant facts, and are unpersuasive.

As Maria Aran has testified, the USCIS Miami District Office is charged with adjudicating Plaintiff's adjustment of status application.  <u>See</u> Aran Decl. ¶¶ 8, 11 (Mot. To Transfer at Exh. 1) (Dkt. Entry 11).  Ms. Aran's affidavit, which was made under penalty of perjury, "is entitled to a presumption of good faith."  <u>Calton v. Babbitt</u>, 147 F. Supp. 2d 4, 8 (D.D.C. 2001).  As Chief of Staff for the USCIS Miami District Office, Ms. Aran has personal

knowledge of the role that office plays in the adjudication of Plaintiff's application.  Ms. Aran

has reviewed and investigated Plaintiff's allegations that USCIS and/or DHS headquarters now

have control of Plaintiff's adjustment of status application, and found them to be false.  <u>See</u>

Supplemental Declaration of Maria Aran, ¶ 3 (Exh. 1 hereto).

    In addition, the 'evidence' Plaintiff has provided to support her unfounded claim that

headquarters has control of her case concerns a *different* request for an immigration benefit, and

not the adjustment of status application at issue in this mandamus action.  As Plaintiff admits, her

inquiries concerned an alleged delay in adjudicating a Form I-131 Application for Travel

document.  <u>See</u> Opp. at 11.  That application was assigned number "I-131 MSC-07-800-48514."

<u>See</u> Supp. Aran Decl., ¶ 5.  Thus, the electronic mail message indicating that I-131 MSC-07-800-

48514 "was relocated to Central Office Washington" pertains to the Form I-131 Plaintiff filed,

and makes no representations about which USCIS component was adjudicating the Form I-485

adjustment of status application; <u>see</u> <u>id.</u> ¶¶ 6-7 (stating that travel application was forwarded to

the Washington office but that adjustment of status application remains within jurisdiction of

Miami District Office).  The adjudication of Plaintiff's adjustment of status application was and

is being conducted by the USCIS Miami District Office.  <u>See</u> <u>id.</u> ¶ 4.

    **B.  The FBI Has No Significant Role In the Adjudicatory Process and the Location
of FBI  Officials Conducting Relevant Investigations Does Not Control the
Venue Analysis.**

    Plaintiff's allegations concerning the FBI's involvement in the national security

investigation into Plaintiff's background also do not make venue proper in this Court.  Plaintiff

contends that the FBI conducts name checks and fingerprint checks in West Virginia, and that

this case concerns delays in the FBI's investigation.  <u>See</u> Opp. at 13-15.  The documents Plaintiff

attached to her opposition indicate that the FBI has a Criminal Justice Information Services

complex in West Virginia, but do not establish that all FBI agents and/or employees involved in completing namecheck and background investigations are located at that complex. See id. Moreover, assuming arguendo that the namechecks and background checks are the only aspects of the national security investigation that remain outstanding, the fact that some aspect of those checks might be performed by personnel in West Virginia would not make the District of Columbia an appropriate forum.

Most importantly, the FBI is not the agency that will adjudicate Plaintiff's application. The FBI conducts the background investigation and sends the results to USCIS. See Supp. Aran Decl. ¶¶ 8-9. But the FBI does not determine whether, when, or how the adjustment application will be adjudicated. Instead, the Miami District Office monitors the FBI's completion of the background investigation, and that office will make the final decision on Plaintiff's adjustment application. See id. ¶ 9.

It bears noting that Plaintiff's complaint seeks an order compelling Defendants to complete the adjudication of her adjustment application. Neither Director Mueller nor any other FBI employee has authority to perform that function. Accordingly, the pace of their investigation is not the core issue in this case. Instead, "the action that Plaintiff seeks this Court to compel is one that will occur in" Miami, Florida. Abusadeh, 2007 WL 2111036, at *6; see also id. at *7 (concluding "the fact that the FBI . . . may play a role in the processing of Plaintiff's application . . . does not alter the fact that the ultimate decision on Plaintiff's application for naturalization . . . will be made" at the USCIS field office).

**C.      The Remaining Public and Private Interest Factors Favor Transfer.**

The remaining factors of the Section 1404 analysis also support transfer, for the reasons set forth in Defendants' motion. The Southern District of Florida has more cases than this Court,

but its cases appear to be resolved more quickly; the median time from filing to disposition of

civil cases is 6.7 months in the Southern District of Florida, compared to 10.2 months in this

Court.  See Exh. 2 (spreadsheets showing courts' caseload).  That court is as familiar with the

applicable federal law as this Court.  Although Plaintiff intimates that Defendants are "forum-

shopping," Opp. at 21, this Court's precedent is equally favorable to Defendants' position as that

of the Southern District of Florida.  Compare Luo v. Keisler, No. 07-0395, Mem. Op. at 4-6

(D.D.C. Nov. 14, 2007) (discussing Section 1252(a)(2)(B) and granting motion to dismiss action

to compel adjudication of plaintiffs' I-485s) (Exh. 4 hereto) with Grinberg v. Swacina, 2007 WL

840109 (S.D.Fla. March 20, 2007) (same).  Moreover, unlike the defendant in the case Plaintiffs

cite, Defendants have requested transfer to a different District, not to a specific judge.  See

Greater Yellowstone Coalition v. Bosworth, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (finding

request to transfer case to a specific judge "suspect" and noting possibility of forum-shopping).

For all those reasons, Defendants request that the Court exercise its discretion to transfer this

action to the Southern District of Florida.[1]

## II.    ENLARGING THE DEADLINE FOR DEFENDANTS' ANSWER WOULD NOT CAUSE UNREASONABLE DELAY.

Defendants also request that the Court defer the deadline for their answer until after it has

resolved the parties' venue dispute.  As noted in Defendants' motion, Defendants expect to file a

dispositive motion pursuant to Rule 12(b) in lieu of an answer.  Venue is a threshold issue that

must be resolved before the Court reaches the merits of a 12(b) motion or any other dispositive

---

[1]  Moreover, Defendants generally request that immigration mandamus actions concerning applications being adjudicated by USCIS field offices outside of the Washington, D.C. area be transferred to the district court with jurisdiction over the applicable field office, not just those involving the Southern District of Florida.  See, e.g., Abusadeh, 2007 WL 2111036, at  *1-*6 (transferring to the Southern District of Texas); No. 07-662 (D.D.C.) at Dkt. Entry 12 (seeking transfer to the Northern District of Texas); No. 07-1601 (D.D.C.) at Dkt. Entry 2 (same).

motion the parties may file.  Enlarging the deadline for Defendants' answer would allow that threshold issue to be resolved before the parties brief the merits in dispositive motions.

Defendants' reference to the fact that the United States Attorney's Office for the Southern District of Florida would have control of this case if it is transferred to that district is not, as Plaintiff suggests, evidence of any dilatory motive.  Defendants simply wished to highlight the practical realities of transferred cases.  If cases are transferred with pending motions, those motions often must be re-filed in the transferee court or, at a minimum, supplemented to incorporate the transferee court's precedent.  Having the dispositive motions prepared and filed by the attorney who will litigate the merits of the case is therefore more efficient, and avoids duplicative filings.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Transfer and for Extension of Time to File Answer should be GRANTED.

Dated:  November 21, 2007                           Respectfully submitted,


        /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


        /s/                                          .
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


        /s/ Robin M. Meriweather                     .
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198 Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

8

UNITED STATES DISTRICT COURT
DISTRICT OF COLOMBIA
CASE NO. 1:07-cv-01210

NATALIA POLIAKOVA,

      Plaintiff

v.

GONZALES, et al.,

      Defendant.

_____/

## DECLARATION OF MARIA ARAN

      I, Maria Aran, declare as follows:

1.      I am the Chief of Staff for the United States Citizenship & Immigration Services

(USCIS) in the Miami and the Caribbean District (MAC), an agency within the

Department of Homeland Security.  My responsibilities as the Chief of Staff include

overseeing the adjudication of applications for immigration benefits provided for under

the Immigration and Nationality Act.

2.      The subject matter of this declaration involves my official duties as the Chief of

Staff for the Miami and the Caribbean District of USCIS.  I am aware of the facts of the

cases referred to herein upon my review of the plaintiffs' administrative files and

computer records maintained by USCIS.  I have also reviewed the allegations made in

Plaintiff's Opposition to Defendants' Motion to Transfer and for Enlargement of Time to

File Answer, along with the exhibits attached thereto.

3.     Contrary to plaintiff's assertions, plaintiff's administrative file is in Miami,

Florida. Likewise, her application for adjustment of status remains pending in the MAC

District.

4.     An alien in the United States who has an application pending for adjustment of

status and who wishes to travel abroad must, with some exceptions, file an Application

for Travel Document in order to preserve the application for adjustment of status. *See*

*generally* 8 C.F.R. § 212.5(f), 245.2(a)(4).

5.     To this end, USCIS records reflect that plaintiff most recently filed an Application

for Travel Document (Form I-131) on December 13, 2006. The receipt number for this

application is MSC-07-800-48514. Attached hereto and incorporated herein as Exhibit A

is a copy of USCIS computer records relating to this application.

6.     USCIS databases reflect that plaintiff's Application for Travel Document, and its

accompanying file, was forwarded to the Washington office where it currently remains

pending.

7.     The Application for Travel Document, MSC-07-800-48514, is the application

which is being referred to in Plaintiff's Opposition to Defendant's Motion to Transfer and

in the exhibits attached thereto.

8.     Based upon information received from an outside third agency, USCIS re-

submitted a second name check request for the plaintiff. USCIS further requested that

the FBI conduct the name check investigation on an expedited basis.

9.     Upon completion of all background checks, it is anticipated that a decision on

plaintiff's application for adjustment of status will be rendered. If plaintiff resides within

the MAC district at the time the checks are completed. the MAC district will adjudicate plaintiff's application for adjustment of status.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed this 2c day of November, 2007.

Maria Aran, Chief of Staff
USCIS, Miami and the Caribbean District

```
                    CLAIMS MAINFRAME SYSTEM
                  APPLICATION UPDATE PROCESSING

        MODE: L
        FORM: I131    RCPT NBR: MSC-07-800-48514 APPEALED FORM:        OWNER: MSC
      PART 2: D    PART 3:           RECEIVED DT: 12/13/2006
      A-NBR: A0 97621385   REF NBR:                ASSOC RCPT NBR:
        NAME: POLIAKOVA                    NATALIA           V
        C/O:
      STREET: 16500 COLLINS AVENUE 2652           CITY: SUNNY ISLES BEACH
        STATE: FL   PROVINCE:               CNTRY:      ZIP/POSTAL: 33160
      GENDER: F DOB: 07061969 COB: RUSSI CNTRY OF CITZ: RUSSI  SOC SEC #: 592492977
    EMPLOYER:                                     TAX ID:
    REP CODE:                      REP TYPE: A  (A=ATTY, B=CERT.REP, C=OTHER)
        NAME: SAMORUKOVA                   ELIZAVETA          V.
        FIRM: NATALIA V. POLIAKOVA, PA              CLASS:
      STREET: 18205 BISCAYNE BLVD, STE 2221
                                              CITY: AVENTURA
        STATE: FL   PROVINCE:               CNTRY:      ZIP/POSTAL: 33160
    STATUS/ACTION: BL1   PHYSICAL FILE REF'D FR NBC TO FLD OFFICE
      INS STATUS:                NEW CLASS:
    PRIORITY DATE:            DATE VALID FROM: 00000000   TO:
    DC998001  UPDATE NOT ALLOWED - RECEIPT OWNED BY MSC
```

REDACTED

RECEIPT DATE: 12/13/2006          RECEIPT NUMBER: MSC-07-800-48514

| ACTION CODE | | ACTION DATE | USER ID |
|---|---|---|---|
| AA | RECEIVED | 12132006 | MSCEFL01 |
| IAA | RECEIPT NOTICE SENT | 12132006 | MSCBATCH |
| IBS1 | NO SYSTEM IDENTIFIED DEROGATORY INFO | 12182006 | MSCIBI0 |
| FF2 | SENT TO NSAU FOR ANALYSIS | 12282006 | MSCNMS01 |
| FS | PROCESSING HOLD PLACED | 12282006 | MSCNMS01 |
| KE | DATA CHANGE | 12282006 | MSCNMS01 |
| BL1 | PHYSICAL FILE REF'D FR NBC TO FLD OFFICE | 01152007 | MSCBATCH |

REDACTED

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

|  |  |  | 12-MONTH PERIOD ENDING SEPTEMBER 30 |  |  |  |  |  | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **DISTRICT OF COLUMBIA** | | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 2,947 | 3,383 | 3,121 | 3,461 | 3,382 | 3,377 | U.S. | Circuit |
| | Terminations | | 3,458 | 3,305 | 3,365 | 3,101 | 3,159 | 3,291 | | |
| | Pending | | 4,114 | 4,634 | 4,422 | 4,656 | 4,338 | 4,151 | | |
| | % Change in Total Filings | Over Last Year | | -12.9 | | | | | 84 | - |
| | | Over Earlier Years | | | -5.6 | -14.9 | -12.9 | -12.7 | 69 | - |
| | Number of Judgeships | | 15 | 15 | 15 | 15 | 15 | 15 | | |
| | Vacant Judgeship Months** | | .0 | .0 | .0 | 3.1 | 17.1 | 27.4 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 197 | 226 | 208 | 231 | 225 | 225 | 91 | - |
| | | Civil | 159 | 180 | 163 | 184 | 179 | 197 | 86 | - |
| | | Criminal Felony | 25 | 30 | 32 | 35 | 34 | 28 | 92 | - |
| | | Supervised Release Hearings** | 13 | 16 | 13 | 12 | 12 | - | 73 | - |
| | Pending Cases | | 274 | 309 | 295 | 310 | 289 | 277 | 80 | - |
| | Weighted Filings** | | 239 | 272 | 261 | 280 | 271 | 284 | 88 | - |
| | Terminations | | 231 | 220 | 224 | 207 | 211 | 219 | 88 | - |
| | Trials Completed | | 7 | 10 | 15 | 15 | 12 | 12 | 93 | - |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 14.4 | 12.9 | 12.8 | 10.2 | 9.6 | 7.7 | 90 | - |
| | | Civil** | 10.2 | 10.8 | 10.3 | 10.3 | 10.5 | 9.8 | 56 | - |
| | From Filing to Trial** (Civil Only) | | 37.0 | 35.0 | 27.4 | 25.0 | 29.0 | 24.0 | 74 | - |
| OTHER | Civil Cases Over 3 Years Old** | Number | 433 | 468 | 408 | 445 | 359 | 282 | | |
| | | Percentage | 15.1 | 14.1 | 12.8 | 12.7 | 11.1 | 8.6 | 83 | - |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.5 | 1.5 | 1.3 | 1.4 | 1.3 | | |
| | Jurors | Avg. Present for Jury Selection | 70.60 | 86.63 | 75.49 | 85.69 | 93.32 | 69.99 | | |
| | | Percent Not Selected or Challenged | 47.2 | 53.6 | 50.4 | 56.6 | 55.7 | 51.9 | | |

| **2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 2382 | 22 | 35 | 491 | 28 | 21 | 135 | 228 | 209 | 42 | 514 | 61 | 596 |
| Criminal* | 367 | 1 | 106 | 12 | 63 | 78 | 20 | 10 | 2 | 13 | 5 | 26 | 31 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **FLORIDA SOUTHERN** | | 2006 | 2005 | 2004 | 2003 | 2002 | 2001 | Numerical Standing | |
| | | | | | | | | U.S. | Circuit |
| **OVERALL CASELOAD STATISTICS** | Filings* | 8,511 | 9,097 | 8,479 | 9,058 | 9,490 | 10,790 | U.S. | Circuit |
| | Terminations | 8,979 | 9,463 | 8,904 | 9,370 | 9,797 | 10,170 | | |
| | Pending | 6,538 | 6,948 | 7,302 | 7,788 | 8,203 | 9,099 | | |
| | % Change in Total Filings — Over Last Year | | -6.5 | | | | | 57 | 8 |
| | % Change in Total Filings — Over Earlier Years | | | .4 | -6.0 | -10.3 | -21.1 | 86 | 9 |
| | Number of Judgeships | 18 | 18 | 18 | 18 | 17 | 17 | | |
| | Vacant Judgeship Months** | .0 | .0 | 7.5 | 12.8 | 29.5 | 21.5 | | |
| **ACTIONS PER JUDGESHIP** | FILINGS — Total | 473 | 505 | 470 | 503 | 559 | 635 | 30 | 5 |
| | FILINGS — Civil | 373 | 397 | 373 | 396 | 441 | 527 | 28 | 5 |
| | FILINGS — Criminal Felony | 76 | 87 | 79 | 90 | 103 | 108 | 40 | 5 |
| | FILINGS — Supervised Release Hearings** | 24 | 21 | 18 | 17 | 15 | - | 39 | 4 |
| | Pending Cases | 363 | 386 | 406 | 433 | 483 | 535 | 52 | 5 |
| | Weighted Filings** | 501 | 525 | 513 | 558 | 606 | 667 | 28 | 5 |
| | Terminations | 499 | 526 | 495 | 521 | 576 | 598 | 28 | 4 |
| | Trials Completed | 19 | 20 | 20 | 21 | 23 | 23 | 47 | 6 |
| **MEDIAN TIMES (months)** | From Filing to Disposition — Criminal Felony | 5.8 | 5.8 | 6.1 | 6.2 | 6.5 | 6.3 | 9 | 2 |
| | From Filing to Disposition — Civil** | 6.7 | 6.6 | 6.3 | 6.3 | 7.7 | 7.3 | 9 | 1 |
| | From Filing to Trial** (Civil Only) | 16.3 | 16.7 | 18.0 | 18.3 | 15.0 | 19.3 | 7 | 1 |
| **OTHER** | Civil Cases Over 3 Years Old** — Number | 962 | 902 | 1,047 | 714 | 223 | 278 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 16.9 | 14.9 | 16.7 | 10.6 | 3.2 | 3.8 | 86 | 9 |
| | Average Number of Felony Defendants Filed Per Case | 1.6 | 1.5 | 1.7 | 1.6 | 1.5 | 1.5 | | |
| | Jurors — Avg. Present for Jury Selection | 49.48 | 41.83 | 42.54 | 44.00 | 42.51 | 45.57 | | |
| | Jurors — Percent Not Selected or Challenged | 26.9 | 21.7 | 19.2 | 23.8 | 22.8 | 28.8 | | |

| **2006 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE** | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 6716 | 152 | 357 | 1225 | 107 | 42 | 1433 | 1045 | 502 | 334 | 763 | 16 | 740 |
| Criminal* | 1348 | 33 | 339 | 280 | 103 | 313 | 32 | 44 | 31 | 46 | 31 | 44 | 52 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MOHAMMAD FAYYAZ and** **GIZELA FAYYAZ,** **Plaintiffs,** **v.** **DEPARTMENT OF HOMELAND** **SECURITY, et al.,** **Defendants.** | **Civil Action 06-02016 (HHK)** |

**ORDER OF TRANSFER**

Before the court is the motion of defendants to transfer or, in the alternative, to dismiss [#5]. Upon consideration of the motion, the opposition thereto, and the record of this case, the court concludes that the motion to transfer this action to the Southern District of Texas should be granted. The Southern District of Texas is the more appropriate venue for this action because plaintiffs reside in Houston, Texas, the United States Citizenship and Immigration Services Office with jurisdiction over plaintiffs' adjustment application is there, and plaintiffs' alleged harm occurred there.

Accordingly, it is this 25th day of October, 2007, hereby

**ORDERED** that the Clerk of the Court shall effect the transfer of  this action to the Southern District of Texas.

Henry H. Kennedy, Jr.
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

NOV 1 ₵ 2007

NANCY MAYER WHITTINGTON, CLERK
U.S DISTRICT COURT

TAO LUO, *et al.*,                          )
                                            )
     **Plaintiffs,**                        )
                                            )
     v.                                    )   **Civil Case No. 07-0395 (RJL)**
                                            )
PETER D. KEISLER[*], *et al.*,              )
                                            )
     **Defendants.**                        )

## MEMORANDUM OPINION
(November _9_, 2007) [#5]

     Plaintiffs, Tao Luo, his wife Peng He, and their minor child Mengming Luo, bring

this action to compel defendants, the Department of Homeland Security ("DHS"), the

United States Customs and Immigration Services ("USCIS"), and the Federal Bureau of

Investigation ("FBI"), to approve pending Form I-485 applications for adjustment of

status to become lawful permanent residents.  Currently before this Court is defendants'

motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim

upon which relief can be granted.  For the following reasons, the Court GRANTS

defendants' motion.

---

[*]  Pursuant to Federal Rule of Civil Procedure 25(d)(1), Acting Attorney General Peter D.
Keisler is automatically substituted for former Attorney General Alberto R. Gonzales as a
defendant in this case.



## BACKGROUND

Plaintiffs, nationals and citizens of China, filed the Complaint in this action on February 23, 2007, seeking to compel defendants to adjudicate plaintiffs' Form I-485 Application to Adjust Status to Permanent Resident (the "Application" or "Form I-485"). (Compl. ¶¶ 2, 7.)  The Application, filed on August 12, 2004, with the Vermont Service Center, USCIS, remains pending, as plaintiffs' national security background checks and plaintiff Tao Luo's name check have not been completed.[1]  (*Id.* ¶ 10; Mot. Dismiss at 2.) Plaintiffs claim that defendants have unreasonably delayed and have refused to adjudicate plaintiffs' Form I-485 applications.  (Compl. ¶ 16.)

## ANALYSIS

### I. *Legal Standards*

Under Rule 12(b)(1), "the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence." *Lindsey v. United States*, 448 F. Supp. 2d 37, 42 (D.D.C. 2006) (quoting *Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006)).  "The [C]ourt, in turn, has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  *Id.* at 42-43 (alteration in original) (quoting *Abu Ali v. Gonzales*, 387 F. Supp. 2d 16, 17 (D.D.C. 2005)).

---

[1]  Plaintiff Peng He's name check was completed on March 3, 2005. (Mot. Dismiss at 2.)

## II. Subject Matter Jurisdiction under the Immigration and Nationality Act

The Immigration and Nationality Act ("INA") grants exclusive discretion to the Attorney General[2] to adjudicate adjustment of status applications.[3]  8 U.S.C. § 1255(a). Specifically, the statute provides that "no court shall have jurisdiction to review . . . any judgment regarding the granting of relief" of an adjustment of status or "any other *decision or action* of the Attorney General or the Secretary of Homeland Security [that is] in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B) (emphasis added).  Defendants argue that this provision, 8 U.S.C. § 1252(a)(2)(B)(ii), divests this Court of subject matter jurisdiction because it commits the entire application process to the discretion of the Attorney General.  Plaintiffs argue that the application process itself is not a "decision or action," and therefore, the discretion of the Attorney General does not extend to the timing of application processing.

Courts addressing this issue of whether § 1252(a)(2)(b)(ii) applies to the pace of processing adjustment of status applications have reached different conclusions.  Some, for example, have concluded for a variety of reasons that federal courts have no jurisdiction to review the pace at which adjudication occurs.  *See, e.g., Serrano v. Quarantillo*, 2007 WL 1101434, at *3 (D.N.J. Apr. 9, 2007) (holding that "[b]ecause the

_____

[2]  Although the text of § 1255(a) gives the Attorney General the authority to adjudicate adjustment of status applications, that authority has been transferred to the Secretary of Homeland Security and his delegate in USCIS. *See* 6 U.S.C. § 271(b)(5); 6 U.S.C. § 557.

[3]  8 U.S.C. § 1255(a) provides that "[t]he status of an alien . . . may be adjusted by the Attorney General, *in his discretion* and under such regulations as he may prescribe, to that of an alien

3

pace of processing an adjustment application comprises a part of USCIS's 'action,' and because USCIS has discretion over such actions, there is no jurisdiction over plaintiff's complaint"); *Li v. Chertoff*, 482 F. Supp. 2d 1172, 1178 (S.D. Cal. 2007) (holding that "as long as USCIS is making reasonable efforts to complete the adjudication, the pace required to complete that process is committed to USCIS's discretion"); *Grinberg v. Swacina*, 478 F. Supp. 2d 1350, 1353 (S.D. Fla. 2007) (holding that Congress intended to include the pace of processing an adjustment of status application within the Attorney General's discretionary function). Others, for a variety of reasons, have concluded the opposite. *See, e.g.*, *Koren v. Chertoff*, 2007 WL 1431948 at *4 (D. Conn. May 14, 2007) (holding that committing the pace of adjudicating adjustment applications to the Attorney General's discretion, such that the entire process is out of the court's jurisdiction, is contrary to the general presumption in favor of judicial review); *Dmitriev v. Chertoff*, No. 06-07677, 2007 WL 1319533 at *3 (N.D. Cal. May 4, 2007) (holding that "action" refers to the specific decision to grant or deny an application, not the entire process of reviewing an application); *Linville v. Barrows*, 2007 WL 1544118, at *3 (W.D. Okla. Apr. 19, 2007) (holding that § 1252(a)(2)(B)(ii) does not preclude the court's jurisdiction because the timeliness of the process of adjudicating an adjustment application is not discretionary). For the following reasons, this Court finds that the analysis applied by Judge Ellis of the Eastern District of Virginia to dismiss a recent case for lack of jurisdiction is the best-reasoned approach and adopts that holding here. *See Safadi v. Howard*, 466 F. Supp. 2d 696, 699 (E.D. Va. 2006).

---

lawfully admitted for permanent residence." 8 U.S.C. § 1255(a) (emphasis added).

In *Safadi*, Judge Ellis first found that the plain meaning of the word "action" in §

1252(a)(2)(B)(ii) includes any acts within the adjustment of status process (not just the

final determination), including the completion of background and security checks and the

pace at which the process proceeds. *Safadi*, 466 F. Supp. 2d at 699 (noting definition of

"action" is "an act or series of acts") (citing Black's Law Dictionary 28 (6th ed. 1990)).

Moreover, he concluded that limiting the term "action" to encompass only a final

decision "fails as it would impermissibly render the word 'action' superfluous" in the

phrase "decision or action." *Id.* at 700.

Further, Judge Ellis found that the absence of statutory time limits imposed by

Congress suggests that Congress intended to include the pace of the process as part of its

broad grant of discretion to the Attorney General in such matters. *Id.* at 699. "If

Congress had intended for the pace of adjudication of adjustment applications to be

subject to judicial review, it could have expressly offered a standard with which to

measure the lapse of time." *Zwang v. Chertoff*, 2007 WL 1753538, at *4 (W.D. Va. Jun.

19, 2007) (citing *Grinberg v. Swacina*, 478 F.Supp.2d 1350, 1352 (S.D. Fla.2007)

(same). Finally, and most importantly, the *Safadi* court noted that given the national

security implications of immigration regulation, the broad discretion afforded the

Attorney General permits the agency to adjudicate applications *only* after conducting a

careful and thorough investigation. *See Safadi*, 466 F. Supp. 2d at 701. Thus, in this

context, the Court's insertion into that process would be inappropriate and could be

detrimental to national security.

As such, because the pace of processing a status application constitutes an "action" within the meaning of the INA, it is unreviewable by this Court. Accordingly, plaintiffs' complaint is DISMISSED for lack of subject matter jurisdiction.[4]

## CONCLUSION

For all of the foregoing reasons, this Court GRANTS defendants' motion to dismiss. An appropriate Order consistent with this ruling accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[4] It is important to note that the other statutes invoked by plaintiffs cannot confer jurisdiction upon this Court to address plaintiffs' claims. First, the INA specifically precludes judicial review "notwithstanding any other provision of law," § 1252(a)(2)(B). Moreover, mandamus relief pursuant to 28 U.S.C. § 1361 is available only if defendant owes plaintiff a "clear nondiscretionary duty," *Ganem v. Heckler*, 746 F.2d 844, 852 (D.C. Cir. 1984); *see also Kauer v. Chertoff*, No. 06-765, 2007 WL 1560319 at *9 (D.D.C. May 31, 2007), and, because § 1255(a) prescribes no time limits for review of adjustment of status applications, defendants owe no such duty to plaintiffs. *Safadi*, 466 F. Supp. 2d at 700. Additionally, plaintiffs' claims pursuant to the APA fail because that statute exempts from judicial review an agency action "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Finally, the federal question statute, 28 U.S.C. § 1331, cannot confer subject matter jurisdiction because a specific statutory bar on jurisdiction defeats a general grant of jurisdiction. *See Safadi*, 466 F. Supp. 2d at 700 (quoting *Danilov v. Aguirre*, 370 F. Supp. 2d 441, 445 (E.D. Va. 2005)).